UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHRISTIAN LANG, ET AL.                    CIVIL ACTION

VERSUS                                    NO: 10-1085

DIRECTV, INC., ET AL.                     SECTION: R(1)


**ORDER AND REASONS**

    Before the Court is plaintiffs' motion to remand state class
action claims,[1] defendants' motion to dismiss certain claims,[2]
defendants' motion to strike class action claims,[3] and
plaintiffs' motion to for leave to file a first amended
complaint.[4]  For the following reasons, the Court DENIES
plaintiffs' motion to remand their state law class action claims,
GRANTS IN PART and DENIES IN PART defendants' motion to dismiss

---

    [1]    (R. Doc. 17.)

    [2]    (R. Doc. 19.)

    [3]    (R. Doc. 20.)

    [4]    (R. Doc. 38.)

certain claims, DENIES defendants' motion to strike the class action claims, and GRANTS plaintiffs' motion for leave to amend the complaint.

## I.    BACKGROUND

Plaintiffs are satellite television technicians who installed DirecTV products at customers' houses.  On February 22, 2010, Plaintiffs filed a petition in the 22nd Judicial District Court of Louisiana on behalf of themselves and all similarly situated individuals.[5]  Plaintiffs seek a collective action under the Fair Labor Standards Act, alleging minimum wage, overtime, and record keeping violations.[6]  Plaintiffs also bring a class action for alleged violations of the Louisiana wage and hour laws[7] and for state law tort violations.[8]

Specifically, plaintiffs allege that the defendants engaged in "a nationwide scheme" in violation of both the FLSA and Louisiana law.[9]  First, plaintiffs allege that the defendants

---

[5]    (R. Doc. 1, Ex. 1.)

[6]    *Id.* at ¶22-27.

[7]    La. R.S. 23:631, *et seq.*

[8]    (R. Doc. 1, Ex. 1 at ¶28-43.)

[9]    *Id.* at ¶1.

2

failed to record or pay wages, or deducted wages, for time actually worked. These uncompensated hours include time worked before the first and after the last customer visit of the day, travel time, and meal periods during which work was performed. Second, plaintiffs allege that the defendants failed to calculate the applicable overtime rate properly. Third, plaintiffs allege that the defendants engaged in a "charge-back scheme" in which they improperly withheld certain amounts from the plaintiffs' pay. At times, plaintiffs allege, they were charged even more than they earned and therefore lost money on a particular job assignment. Plaintiffs allege that each of these actions violated the FLSA. They also contend that the deductions from their pay violated the Louisiana wage and hour laws. In addition, plaintiffs allege that under state tort law, the defendants' failure to pay them the proper amounts constituted negligence, misrepresentation, acts of dominion over plaintiffs' property, and fraud, and that defendants' actions caused them severe emotional distress.

Defendants removed the case to this Court,[10] and plaintiffs now move to remand their state claims to state court.[11]

---

[10]    (R. Doc. 1.)

[11]    (R. Doc. 17.)

Defendants move to dismiss the FLSA claims and the state law fraud claims,[12] and they also move to strike the class allegations associated with the state law claims.[13]  Plaintiffs also move for leave to amend the complaint.[14]

## II.  MOTION TO REMAND

### A.  Legal Standard

A defendant may remove any civil action over which the federal court has original jurisdiction.[15]  The removing party bears the burden of establishing the existence of federal jurisdiction.[16]  Section 1441 is to be narrowly construed to restrict removal because "a defendant's use of that statute deprives a state court of a case properly before it and thereby implicates important federalism concerns."[17]

### B.  Discussion

---

[12]  (R. Doc. 19.)

[13]  (R. Doc. 20.)

[14]  (R. Doc. 38.)

[15]  28 U.S.C. § 1441(a).

[16]  *See Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).

[17]  *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 922 (5th Cir. 1997).

It is undisputed that the removal of the FLSA claims to this Court was proper.  Further, the presence of a federal claim brings the entire action within the Court's original jurisdiction.[18]  Thus, removal of both the federal and state law claims was proper under section 1441.  Plaintiffs also have not questioned that the Court may exercise supplemental jurisdiction over the state claims under section 1367(a).[19]  Plaintiffs contend, however, that the Court should exercise its discretion to remand their state claims under section 1441(c) and should decline supplemental jurisdiction under section 1367(c).  These provisions will be considered in turn.

1.  *Discretionary Remand*

Section 1441(c) provides:

Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or,

_____

[18]     *City of Chicago v. International College of Surgeons* 522 U.S. 156, 166 (1997).

[19]     28 U.S.C. 1367(a) ("(a) Except as provided in subsections (b) and (c) . . . in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.").

in its discretion, may remand all matters in which State law predominates.[20]

For remand to be proper under section 1441(c), the claim to be remanded must be (1) a separate and independent claim or cause of action; (2) joined with a federal question; (3) otherwise non-removable; and (4) a matter in which state law predominates.[21]  One claim is not separate and independent from another when "there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions."[22]  The test for separateness is "the separateness of the wrong to the plaintiff,"[23] and the test for independence is whether the claims "involve substantially the same facts and transactions."[24]  In making this determination, the Court looks to the plaintiffs' complaint, which controls.[25]

Plaintiffs' state claims are not separate and independent

---

[20]     28 U.S.C. § 1441(a).

[21]     *Eastus v. Blue Bell Creameries, L.P.*, 97 F.3d 100, 104 (5th Cir. 1996).

[22]     *American Fire & Casualty Ins. Co. v. Finn*, 341 U.S. 6, 14 (1951).

[23]     *Eastus*, 97 F.3d at 104.

[24]     *American Fire & Casualty Ins. Co.*, 341 U.S. at 16; *see also Eastus*, 97 F.3d at 104.

[25]     *See American Fire & Casualty Ins. Co.*, 341 U.S. at 14; *Eastus*, 97 F.3d at 104-05.

6

from their FLSA claims.  The claims are not separate because they allege the same wrongs, namely, a "charge-back" scheme in which the defendants made improper deductions from plaintiffs' pay. When a single wrong gives rise to multiple claims, those claims are not considered separate.[26]  Further, the state and federal claims are not independent because they involve substantially the same facts.  Plaintiffs allege a single "nationwide scheme" that is not divisible into state and federal components.  Evidence of the deductions made from plaintiffs' pay will be identical for the state and federal claims.  Moreover, both sides agree that a crucial issue will be whether any or all of the defendants employed the plaintiffs and the evidence on this question will be the same as well.  State and federal claims are not independent when their facts overlap to this extent.[27]

---

[26]  *See Eastus*, 97 F.3d at 105 (claim for intentional infliction of emotional distress was not separate and independent from Family and Medical Leave Act claim when both were based on the employee's discharge); *Nabors v. City of Arlington*, 688 F.Supp. 1165 (E.D.Tex. 1988) (state law and 42 U.S.C. § 1983 claims based on employee's termination were not separate and independent).

[27]  *See, e.g.*, *Saenz v. Austin Roofer's Supply, LLC*, 664 F.Supp.2d 704, 710 (W.D.Tex. 2009) (FLSA and state breach of contract claims were not separate and independent when both claims "rely on substantially the same facts, namely hours worked, wages owed based on hours worked and commissions, and wages actually paid"); *Demissie v. 7-Eleven Inc.*, No. 3:09-CV-1153-M, 2009 WL 4858057 (N.D.Tex. Dec. 14, 2009) (FLSA and state tort and breach of contract claims were not separate

Plaintiffs argue that the state and federal claims have different elements and requirements. Assuming that this is true, the claims nonetheless involve a single wrong and substantially the same facts. The claims, therefore, are not separate and independent.[28] Moreover, severing the state claims and requiring parallel proceedings in state and federal court would waste

_____

and independent); *Holtzman v. B/E Aerospace, Inc.*, No. 07-80551-CIV, 2007 WL 3379763 at *3-4 (S.D.Fla. Nov. 14, 2007) (state breach of contract and tort claims were not separate and independent from FMLA claim because all claims would require the same kinds of evidence); *Thibault v. BellSouth Telecommunications, Inc.*, No. 07-0200, 2007 WL 756616 at *2 (E.D.La. Mar. 8, 2007) (FLSA and Louisiana wage and hour claims were not separate and independent when they arose from substantially the same facts); *Conine v. Universal Oil Product Co.*, No. Civ.A. 05-2011, 2006 WL 681180 at *2 (W.D.La. Mar. 14, 2006) ("Separate legal claims arising from the termination of employment are ordinarily not separate and independent within the meaning of the rather demanding standard."); *cf. Saenz*, 664 F.Supp.2d at 708-09 (state law tort claims were separate and independent from FLSA claims because there was no common basis in fact between the claims other than the workplace and the employment relationship); *Bates v. Tech Clean Industries, Inc.*, No. Civ.A. 301CV1304L, 2002 WL 32438759 (N.D.Tex. Oct. 15, 2002) (FLSA overtime claims and state damages claim for a slip-and-fall injury were separate and independent because the "only commonality" between the claims is that they related to plaintiff's employment with defendant); *Nesbitt v. Bun Basket, Inc.*, 780 F.Supp. 1151, 1153 (W.D.Mich. 1991) (FLSA and state breach of contract claims were separate and independent when "[p]roving one of these claims will be of little, if any, assistance to the establishment of the other.").

[28]    *See, e.g.*, *Doll v. U.S. West Communications, Inc.*, 85 F.Supp.2d 1038, 1042 (D.Colo. 2000) (state breach of contract and tort claims were not separate and independent from FMLA and ADA claims, "although grounded on different theories of liability").

judicial and party resources.[29]  Thus, the Court will not remand

the state claims under section 1441(c).

*2.  Supplemental Jurisdiction*

Section 1367(c) provides that a district court may decline

to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or
> claims over which the district court has original
> jurisdiction,
> (3) the district court has dismissed all claims over which
> it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling
> reasons for declining jurisdiction.[30]

In addition to the statutory factors, the court must also balance

the factors of judicial economy, convenience, fairness, and

comity.[31]  Section 1367(c)(3) does not apply because the Court

has not dismissed all of the plaintiffs' federal claims, but the

Court will consider subsections (1), (2), and (4).

Plaintiffs assert that their state claims raise novel and

complex issues of state law under section 1367(c)(1), but they do

not specify what they are.  To the contrary, plaintiffs' state

---

[29]  *Alexander v. Cannon Cochran Management Services, Inc.*,
No. 09-4614, 2010 WL 1254527 at *2 (E.D.La. Mar. 25, 2010)
(addressing FSLA and state claims in one forum would serve
judicial economy); *Holtzman*, 2007 WL 3379763 at *4 (same).

[30]  28 U.S.C. 1367(c).

[31]  *Smith v. Amedisys, Inc.*, 298 F.3d 434, 446 (5th Cir.
2002).

wage-and-hour and tort claims do not appear to raise any novel or complex issues of state law. Thus, section 1367(c)(1) does not apply.

As to section 1367(c)(2), plaintiffs' state law claims do not substantially predominate over their federal claims. A state claim substantially predominates if it "constitutes the real body of a case, to which the federal claim is only an appendage."[32] If "state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals."[33] As discussed *supra*, plaintiffs' federal and state actions involve substantially the same facts and evidence. The claims are "sufficiently intertwined so that one does not predominate over the other."[34] The FLSA claims are addressed at

---

[32]    *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 727 (1966).

[33]    *Id.* at 726-27.

[34]    *United Disaster Response, L.L.C. v. Omni Pinnacle, L.L.C.*, 569 F.Supp.2d 658, 667 (E.D.La. 2008); *see also Villarreal v. JP Morgan Chase Bank, Nat. Ass'n*, No. C-10-53, 2010 WL 2653484 at *2 (S.D.Tex. July 6, 2010) (state claims did not predominate when state and federal claims were "closely connected" and arose out of the same alleged behavior); *Niemiec v. Ann Bendick Realty*, No. 04-cv-00897, 2007 WL 5157027 at *13 (E.D.N.Y. Apr. 23, 2007) (state wage-and-hour claims did not predominate over FLSA claims).

length in the complaint, and they cannot be considered a mere appendage to the state claims.

Plaintiffs also argue that the Court should decline to exercise supplemental jurisdiction over their state law claims because there are different procedures for aggregating class members in an FLSA collective action and in a Rule 23(b)(3) class action. A collective action functions like a class action under Rule 23 in that it provides a judicial mechanism for the efficient resolution of the claims of multiple plaintiffs that involve common factual issues on the basis of representative proof.[35] Under the collective action provision of the FLSA, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."[36] Therefore, in the FLSA context, a plaintiff must affirmatively join the lawsuit or "opt in," whereas under Rule 23(b)(3), a claimant must affirmatively "opt out" of the class action in order to preserve individual claims.

---

[35] *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212-14 (5th Cir. 1995) (discussing similarities between collective action under the FLSA § 216(b) standard and Rule 23 class actions), *abrogated on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).

[36] 29 U.S.C. § 216(b).

These procedures are indeed different,[37] but those
differences do not justify remanding plaintiffs' state law
claims.  The requirement that class members opt into a collective
action applies only to claims under the FLSA and does not limit
the procedural mechanisms available to employees who bring state
law actions.[38]  In cases with both FLSA collective action claims
and Rule 23 class action claims based on state law, most courts
have held that the differences between opt-in and opt-out
procedures do not justify remanding the state law claims.[39]

_____

[37]     *See LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286,
288-89 (5th Cir. 1975) (per curiam) (ruling that the opt-out
procedure was not available in an ADEA collective action adopted
from the FLSA; noting the "fundamental, irreconcilable
difference" between these procedures").

[38]     *See Lehman v. Legg Mason, Inc.*, 532 F.Supp.2d 726, 731
(M.D.Pa. 2007), citing 29 U.S.C. § 218 (FLSA does not excuse
noncompliance with state law); *McCormick v. Festiva Development
Group, LLC*, No. 09-365-P-S, 2010 WL 582218 at *4-8 (D.Me. Feb.
11, 2010) (permitting parallel FLSA collective action and Rule 23
class action).

[39]     *Lehman,* 532 F.Supp.2d at 731, citing Noah A. Finkel,
*State Wage-and-Hour Law Class Actions: The Real Wave of "FLSA"
Litigation?*, 7 Emp. Rts. &  Emp. Pol'y J. 159, 174-75 (2003).
*See, e.g., Lindsay v. Government Employees Ins. Co.*, 448 F.3d
416, 424 (D.C. Cir. 2006) ("While there is unquestionably a
difference-indeed, an opposite requirement-between opt-in and
opt-out procedures, we doubt that a mere procedural difference
can curtail section 1367's jurisdictional sweep.");
*Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 374
(S.D.N.Y. 2007) (certifying both FLSA collective action and Rule
23 class action, despite procedural differences); *Bartleson v.
Winnebago Industries, Inc.*, No. C02-3008-MWB, 2003 WL 22427817 at
*6 (N.D.Iowa Oct. 24, 2003) (same); *Ansoumana v. Gristede's*

Moreover, some courts that have remanded the state law class action in this situation have relied at least in part on factors not present here, such as a showing that state claims vastly outnumbered federal claims.[40]

If the FLSA collective action and the state law class action were severed from each other, numerous practical difficulties would result.[41] First, discovery in the two cases would be largely duplicative and uncoordinated. Second, a ruling in one case could have a preclusive effect in the other. Alternatively, the two courts could make conflicting rulings regarding

---

*Operating Corp.*, 201 F.R.D. 81 at 95-96 (S.D.N.Y. 2001) (same); *Kelley v. SBC, Inc.*, 1998 U.S. Dist. Lexis 18643, *37-*38 (N.D. Cal. Nov. 13, 1998) (same). *See also Beltran-Benitez v. Sea Safari, Ltd.*, 180 F.Supp.2d 772, 773-74 (E.D.N.C. 2001) (procedural tension between FLSA collective action and Rule 23 class action does not constitute an "exceptional circumstance" that would justify declining supplemental jurisdiction under section 1367(c)(4)); *Bartleson*, 2003 WL 22427817 at *6 (despite this procedural tension, state claims did not predominate under section 1367(c)(2)).

[40] *See De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309-10 (3d Cir. 2003) (remanding state class action claims which vastly outnumbered federal claims; "a federal tail to wag what is in substance a state dog."); *Jackson v. City of San Antonio*, 220 F.R.D. 55, 59-61 (W.D.Tex. 2003) (although the FLSA's opt-in provision did not bar a related state law Rule 23 class action from proceeding, the court remanded the state law claims where those claims vastly outnumbered the federal claims and the claims were originally filed as two separate cases).

[41] *See Bartleson*, 2003 WL 22427817 at *6; *Ansoumana*, 201 F.R.D. 81 at 96 (S.D.N.Y. 2001).

discovery, relevance, privilege, or other procedural or substantive matters.  Keeping these claims in a single forum will avoid needless litigation expenses and promote judicial economy.

Some courts have ruled that proceeding with both an opt-in and an opt-out class action would result in notices that would be confusing to potential class members.[42]  While the Court is aware of this possibility, the danger of confusion would also exist if opt-in and opt-out actions were to proceed simultaneously in federal and state court.  The Court will consider the merits of any notices drafted by counsel at the appropriate time.  At present, the Court will not remand plaintiffs' state law claims on this basis.[43]

For these reasons, plaintiffs' motion to remand their state law claims is DENIED.


## III. MOTION TO AMEND

Leave to amend a complaint is freely given "when justice so

---

[42]    *See, e.g.*, *McClain v. Leona's Pizzeria, Inc.*, 222 F.R.D. 574, 577 (N.D.Ill. 2004).

[43]    *Ansoumana*, 201 F.R.D. at 95-96 (certifying FLSA collective action and Rule 23 state law class action; holding that "[c]ompetent counsel will be able to draft appropriate notices, and they and the court should be able to manage this case fairly and efficiently.").

requires."[44]  In exercising its discretion to grant or deny leave to amend, the Court may consider whether the party seeking leave is doing so after undue delay, in bad faith, or for a dilatory motive.[45]  "It is within the district court's discretion to deny a motion to amend if it is futile."[46]  Futility means "that the amended complaint would fail to state a claim upon which relief could be granted."[47]  To determine futility, the court "appl[ies] the same standard of legal sufficiency as applies under Rule 12(b)(6)."[48]

Plaintiffs' proposed amendments generally fall into two categories: allegations adding further detail to the existing FLSA claims,[49] and allegations of retaliation in violation of the FLSA.[50]  Defendants argue that both categories of amendments should be rejected.

---

[44]    Fed. R. Civ. P. 15(a)(2); *see also High Tech Comm's v. Panasonic Co.*, No. 94-1477, 1995 WL 65133, at *1 (E.D.La. 1995).

[45]    *See Jamieson By and Through Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir. 1985).

[46]    *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000).

[47]    *Id.*

[48]    *Id.*

[49]    (R. Doc. 38-3, ¶48-52.)

[50]    *Id.* at ¶44-47.

First, defendants argue that the proposed amendments that add further detail to the FLSA allegations would be futile because they do not cure the deficiencies that they assert exist in the original complaint.  Under the standard for futility, the success of plaintiffs' motion to amend depends on whether the allegations of the complaint, as amended, are sufficient to survive a Rule 12(b)(6) motion.  Here, in addition to opposing the motion to amend, the defendants have also moved to dismiss the case under Rule 12(b)(6).  Because the standards for deciding these motions are identical, the Court will not consider them separately, but rather will consider defendants' motions to dismiss in light of the proposed amended complaint.[51]

Second, defendants argue that the retaliation claim would be more appropriately adjudicated in a separate action.  Plaintiffs claim that they have suffered retaliation, but they do not allege they share this in common with the other potential FLSA claimants.  Although the assertion of these individual claims may ultimately affect the certification decision, plaintiffs are free to join their claims under Rule 18.  Moreover, Defendants do not assert any undue delay, bad faith, or dilatory motive on the part

---

[51]  *See McCormick v. Festiva Development Group, LLC*, No. 09-365-P-S, 2010 WL 582218 at *2-3 (D.Me. Feb. 11, 2010) (granting motion to amend FLSA claims that was filed in response to motions to dismiss).

of the plaintiffs, nor do they allege that these amendments are futile.  Thus, there is no reason to deny plaintiffs' motion to amend.

Defendants offer no arguments in opposition to the remainder of the proposed amendments.  For the reasons stated, the Court GRANTS plaintiffs' motion for leave to amend.

## IV. MOTIONS TO DISMISS

### A.  Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, the plaintiffs must plead enough facts "to state a claim to relief that is plausible on its face."[52]  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[53]  A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.[54]  But the Court is not bound to accept as true

---

[52]     *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

[53]     *Iqbal*, 129 S.Ct. at 1949.

[54]     *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

legal conclusions couched as factual allegations.[55]

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiffs' claim is true.[56]  It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[57]  In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim.[58]  If there are insufficient factual allegations to raise a right to relief above the speculative level,[59] or if it is apparent from the face of the complaint that there is an insuperable bar to relief,[60] the claim must be dismissed.

**B.   Motion to Dismiss Certain Claims**

*1.   Employment Relationship*

---

[55]    *Iqbal*, 129 S.Ct. at 1949-50.

[56]    *Id.*

[57]    *Twombly*, 550 U.S. at 555.

[58]    *Lormand*, 565 F.3d at 255-57.

[59]    *Twombly*, 550 U.S. at 555.

[60]    *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n. 9 (5th Cir. 2007).

Defendants contend that plaintiffs have not adequately pleaded that they were employees of defendants, which is necessary to recover under the FLSA.[61]  Plaintiffs do allege in their complaint that they were employees of DirecTV, JP&D, and Modern Day.[62]  Plaintiffs also make allegations that are relevant to the factors used by the Fifth Circuit to determine employment status.  Plaintiffs have pleaded facts upon which a plausible inference of employment can be made, and the Court therefore will not dismiss plaintiffs' FLSA claims.

The FLSA defines "employee" as "any individual employed by an employer"[63] and "employ" as "to suffer or permit to work."[64] The Supreme Court has observed that this definition is broad.[65] In determining whether an employment relationship exists, the Fifth Circuit has applied the following factors: (1) the degree of control the company exercises over the individual; (2) whether the employment takes place on the premises; (3) whether the company has the power to hire, fire or modify employment; (4)

---

[61]    (R. Doc. 33.)

[62]    (R. Doc. 1, ¶2.)

[63]    29 U.S.C. § 203(e)(1).

[64]    *Id.* § 203(g).

[65]    *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728 (1947).

whether the employees perform a specialty job on the production line; and (5) whether the employee may refuse to work for the company or choose to work for others.[66]  These factors are illustrative and should not be applied mechanically.  Rather, in determining employment status, the Court must consider the totality of the circumstances and the economic reality of the overall arrangement.[67]  Accordingly, a plaintiff is not required to show that all five of the factors have been met.[68]  "Where the work done, in its essence, follows the usual path of an employee, putting on an 'independent contractor' label does not take the worker from the protection of the Act."[69]  Further, a defendant and its subordinate contractor may be jointly responsible for the

---

[66]    *Hodgson v. Griffin Brand of McAllen, Inc.*, 471 F.2d 235, 237-38 (5th Cir. 1973); *see also Rutherford* 331 U.S. at 730 (implicitly applying materially similar factors).

[67]    *Hodgson*, 471 F.2d at 237; *Martin v. Bedell*, 955 F.2d 1029, 1034 n.8 (5th Cir. 1992); *see also Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71 n.8 (2d Cir. 2003).

[68]    *See, e.g., Martin,* 955 F.2d at 1034 (holding that whether or not work was done at defendants' own location was not dispositive); *McLaughlin v. Seafood, Inc.*, 867 F.2d 875, 877 (holding that plaintiffs were employees even though, contrary to the fifth factor, they worked for other employers as well); *Zheng*, 355 F.3d at 71 (holding that though the *Rutherford* factors may be sufficient to find employment, they are not necessary).

[69]    *Rutherford*, 331 U.S. at 729.

contractor's employees.[70]

The Court's review of the complaint reveals that plaintiffs have made sufficient allegations of employment to survive a motion to dismiss. Plaintiffs generally allege that they were jointly employed by the defendants.[71] In addition, plaintiffs make specific allegations that, if true, would suggest that each of the defendants exercised control over them and had the power to modify their employment.

First, with regard to DirecTV, Plaintiffs Lang and Humphreys allege that DirecTV controlled their daily routines.[72] They allege that DirecTV set the rate of compensation for each job,

---

[70]    *Hodgson*, 471 F.2d at 237.

[71]    (R. Doc. 8.) *See Xavier v. Belfor Group USA, Inc.*, 254 F.R.D. 281, 292 (E.D.La. 2008) (relatively general allegations of employment were sufficient to state an FLSA claim).

[72]    (R. Doc. 38, Ex. B, ¶5; Ex. C, ¶5.) These allegations appear in the declarations of plaintiffs Christian Lang and Edward Dwayne Humphreys. Defendants argue that these declarations should not be considered for purposes of ruling on the motion to dismiss because they were not attached to the original complaint. However, plaintiffs' have attached these documents to their amended complaint. (R. Doc. 38.) A document attached as "an exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P. 10(c). The Court will therefore consider the declarations at this time. *See Brown v. Fla. Dept. Of Highway Safety and Motor Vehicles*, No. 4:09cv171-RS/WCS, 2010 WL 1383953 at *4 (N.D. Fla. Mar. 19, 2010) (holding that attachments to amended complaint may be considered for Rule 12(b)(6) purposes); *Nampa Classical Acad. v. Goesling*, No. CV09-427-S-EJL, 2010 WL 1977434 at *5 (D. Idaho May 17, 2010) (same).

monitored their performance, and ultimately controlled their
receipt of wages.[73]  Moreover, they claim that DirecTV and JP&D
conducted background checks and drug tests at facilities of their
choice.[74]  Humphreys also alleges in his declaration that he was
required to wear a DirecTV uniform, give clients DirecTV
paperwork, and have a DirecTV logo on his vehicle.[75]  He also
alleges that he installed only DirectTV equipment.[76]  In
addition, Lang and Humphreys allege that DirecTV had the power to
determine whether they were employed as installers of DirecTV
equipment.[77]  Plaintiffs further allege that the defendants
orchestrated a "charge-back" scheme to deprive them of earned
wages[78] and that the charge-back and underpayment scheme
originated with DirecTV.[79]  The allegations of DirecTV's control
over the technicians, including control of their compensation,
work assignments, and uniforms, all tend to indicate that the

---

[73]   (R. Doc. 38, Ex. B, ¶6-7; Ex. C, ¶6-7.)

[74]   (R. Doc. 38, Ex. B, ¶3; Ex. C, ¶3.)

[75]   (R. Doc. 38, Ex. C, ¶2.)

[76]   *Id.*

[77]   (R. Doc. 38, Ex. B, ¶4; Ex. C, ¶4.)

[78]   (R. Doc. 1, Ex. 1, ¶17 and ¶18(H).)

[79]   (R. Doc. 38-3, ¶50.)

plaintiffs were employees of DirecTV.[80]

Plaintiffs allege that Modern Day and JP&D were "straw men" that DirecTV set up in an attempt to circumvent the FLSA and Louisiana law.[81] Although most of the plaintiffs' allegations do not single out either of these entities, plaintiffs have sufficiently pleaded that they were jointly employed by Modern Day and JP&D. Lang alleges that he was hired by Modern Day,[82] and Humphreys alleges that he was hired by Modern Day, JP&D, and DirecTV.[83] In addition, plaintiffs claim that the charge-backs that originated with DirecTV were passed

---

[80]   *See, e.g.*, *Rutherford*, 331 U.S. at 730 (holding that control of workers' pay and supervision of performance indicated an employment relationship); *Hathcock v. Acme Truck Lines, Inc.*, 262 F.3d 522, 526-27 (5th Cir. 2001) (holding that plaintiff was employee where plaintiff had to submit to drug tests, was required to drive a vehicle with the defendant company's logo, the company set delivery rates, and the plaintiff's duties were dictated by company needs); *Parrilla v. Allcom Const. & Installation Services*, No. 6:08-cv-1967-Orl-31GJK, 2009 WL 2868432 at *2-4 (M.D. Fla. Aug. 31, 2009) (holding that cable installation technician was employee where defendant decided work assignments and schedule, supervised work and quality control, and imposed charge-backs); *Boudreaux v. Bantec, Inc.*, 366 F.Supp.2d 425, 434 (E.D. La. 2005) (holding that there was an issue of material fact as to computer technician's employment status where defendant set service calls, set procedure for servicing calls, and audited call routes).

[81]   (R. Doc. 1, Ex. 1, ¶18(H); R. Doc. 38-3, ¶56.)

[82]   (R. Doc. 38, Ex. B, ¶1.)

[83]   (R. Doc. 38, Ex. C, ¶1.)

23

down to the HSPs and their subcontractors.[84]  In this way, Modern Day and JP&D allegedly participated in a scheme that curtailed the amount that the plaintiffs were paid.

As to Modern Day in particular, Lang and Humphreys allege that they reported directly to Modern Day.[85]  They also assert that Modern Day constructively discharged them after the complaint was filed.[86]  Plaintiffs make further allegations that suggest that they were not independent contractors.  For example, Lang and Humphreys allege that the defendants withheld workers' compensation premiums from their pay.[87]  If the plaintiffs worked directly under Modern Day and were not independent contractors, that would imply that they were employees of Modern Day.

The complaint presents JP&D as an intermediary between Modern Day and DirecTV.  Lang and Humphreys allege that JP&D or DirecTV assigned each of them a contractor number that DirecTV used to monitor their pay and performance.[88]  Moreover, as noted above, Lang and Humphreys claim that JP&D, as well as DirecTV,

---

[84]    *Id.* at 50.

[85]    (R. Doc. 38, Ex. B, ¶3; Ex. C, ¶3.)

[86]    (R. Doc. 38-3, ¶44.)

[87]    (R. Doc. 38, Ex. B, ¶13; Ex. C, ¶11.)

[88]    (R. Doc. 38, Ex. B, ¶7; Ex. C, ¶7.)

conducted background checks and drug tests at facilities of their choice.[89]  They also claim that JP&D is currently preventing them from being employed to work on DirecTV jobs in retaliation for filing the complaint.[90]

Plaintiffs have sufficiently pleaded that they were employed by each of the defendants.  Thus, defendants' motion to dismiss plaintiffs' FLSA claims on this ground is DENIED.

*2.    Collective Action*

Defendants also move to dismiss plaintiffs' collective action claims under the FLSA.  Defendants contend that the plaintiffs have not adequately pleaded facts that would show that they are similarly situated to the potential class members.

The FLSA allows one or more employees to pursue an action in a representative capacity for "other employees similarly situated."[91]  A collective action affords plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources.  The judicial system benefits by efficient

---

[89]    (R. Doc. 38, Ex. B, ¶3; Ex. C, ¶3.)

[90]    (R. Doc. 38-3, ¶44.)

[91]    *Id.*

resolution in one proceeding of common issues of law and fact."[92]
The FLSA does not define what it means for employees to be
"similarly situated" such that collective adjudication of their
claims is appropriate.  Courts have utilized two methods for
determining whether plaintiffs are similarly situated.  The Fifth
Circuit has not determined whether either approach is required.
The prevailing method, first articulated in *Lusardi v. Xerox
Corp.*,[93] calls for a two-step analysis.  First, at the "notice
stage," a court determines whether notice should be given to
potential members of the collective action, "usually based only
on the pleadings and any affidavits."[94]  Because the court has
little evidence at this stage, "this determination is made using
a fairly lenient standard, and typically results in 'conditional
certification' of a representative class."[95]  If the Court grants

---

[92]    *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170
(1989).

[93]    118 F.R.D. 351 (D.N.J. 1987); *see also Johnson v. Big
Lots Stores, Inc.*, 561 F. Supp.2d 567, 569 (E.D.La. 2008)
(conditional certification is the majority approach); *Basco v.
Wal-Mart Stores Inc.*, No. Civ.A. 00-3184, 2004 WL 1497709 at *4
(E.D.La. July 2, 2004) ("the two-step ad hoc approach is the
preferred method for making the similarly situated analysis").

[94]    *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1213-14
(5th Cir. 1995), *overruled on other grounds by Desert Palace,
Inc. v. Costa*, 539 U.S. 90 (2003).

[95]    *Id.* at 1214.

conditional certification, the case proceeds as a collective action through discovery.[96]  The defendant may then move for decertification, at which point the court will decide, with the benefit of considerably more information, whether the employees are similarly situated.[97]

To determine whether plaintiffs are similarly situated to other employees who are potential members of a collective action, *Lusardi* applies a three-factor test: (1) the extent to which the employment settings of employees are similar or disparate; (2) the extent to which any defenses that an employer might have are common or individuated; and (3) general fairness and procedural considerations.[98]  The more dissimilar plaintiffs' job experiences are from one another and the more individuated an employers' defenses are, the less appropriate the matter is for collective treatment.  Some courts, however, have not used the three-part *Lusardi* test, but instead have decided whether a collective action is appropriate by drawing on the elements for

---

[96]  *Id.*

[97]  *Id.*

[98]  *Kuperman v. ICF Intern.*, No. 08-565, 2008 WL 4809167 at *5 (E.D.La. 2008), quoting *Johnson* 561 F.Supp.2d at 573.

certification of a class action under Rule 23.[99]  The Fifth

Circuit has affirmed a district court's decertification decision

based on the use of the *Lusardi* test, although it did not

specifically endorse it.[100]  This Court will use the *Lusardi*

approach in determining whether this case is appropriate for

collective treatment.[101]

This case has not yet reached the first, conditional

certification stage of the process outlined in *Lusardi*.

Plaintiffs have not moved for certification, and they have not

proposed that specific notices be distributed.  The Court finds

that defendants' motion to dismiss is premature because

plaintiffs have not moved for certification and have had no

opportunity to develop a record.[102]  This challenge on the

---

[99]     *Shushan v. University of Colorado*, 132 F.R.D. 263
(D.Colo. 1990).

[100]    *Mooney*, 54 F.3d at 1215-16.

[101]    *Johnson v. Big Lots Stores, Inc.*, 561 F.Supp.2d 567,
573-74 (E.D.La. 2008) (applying *Lusardi* approach to FLSA
certification).

[102]    *See Hoffman v. Cemex, Inc.*, No. H-09-3144, 2009 WL
4825224 at *4 (S.D.Tex. Dec. 8, 2009) (denying motion to dismiss
FLSA collective action claim; holding that "[w]hether proceeding
collectively is appropriate will be addressed when the plaintiffs
move for conditional certification and issuance of notice to the
class."); *Badgett v. Texas Taco Cabana, L.P.*, No. Civ.A.H 05
3624, 2006 WL 367872 at *4 (S.D.Tex. Feb. 14, 2006) (same); *cf.*
*Brechler v. Qwest Communications Intern., Inc.*, No.
cv-06-00940-PHX-ROS, 2009 WL 692329 at *3 (D.Ariz. Mar. 17, 2009)

pleadings seeks to end-run the certification process by trying certification on the face of the complaint.  Defendants have not pointed to any controlling authority that establishes detailed pleading requirements for collective actions.

Plaintiffs' allegations are not uniquely personal or obviously unsuited to a collective action.  At the conditional certification stage, the Court will decide whether the plaintiffs are similarly situated to potential class members under a "fairly lenient standard."[103]  Courts generally "require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan[.]"[104]  Here, plaintiffs have not alleged "isolated personal incidents of failures to pay, but rather, contend that they and the potential class members were victims of a company-wide policy" of improper deductions.[105]  Plaintiffs identify the following class:

---

(plaintiffs alleged "a common mechanism through which they were denied overtime," but discovery revealed "a subtler system of pressure and coercion that, ultimately, appears to have to have been backed or not by the individual managers," and thus plaintiffs were not similarly situated to collective action members).

[103]    *Mooney*, 54 F.3d at 1214.

[104]    *Id.* at 1214 n.8, quoting *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988).

[105]    *Crain v. Helmerich and Payne Intern. Drilling Co.*, No. 92-0043, 1992 WL 91946 at *2 (E.D.La. April 16, 1992) (certifying

> There are numerous other similarly situated employees and
> former employees of the defendants who have been deprived of
> rights protected by the FLSA.  Specifically, Technicians and
> Installers who have installed and/or serviced DirecTV
> equipment and have been subjected to the chargebacks on
> their pay that are determined by DirecTV, their HSPs and/or
> subcontractors, *after* the original work has been completed,
> should receive notice and the opportunity to join the
> present lawsuit.[106]

In their complaint, plaintiffs allege that "Defendants have

engaged and continue to engage in a centralized, widespread

pattern and practice of FLSA violations and intentional schemes

designed to undermine and avoid the minimum wage and overtime pay

provisions of the FLSA on a systemic, corporate-wide basis."[107]

Plaintiffs allege that this policy originated "at the DirecTV

level."[108]  Further, Plaintiffs Lang and Humphreys assert, based

on their experience, that the defendants' chargeback scheme

operated the same way in ten states.[109]

Plaintiffs have adequately pleaded that they are similarly

situated to potential collective action members.  The Court will

consider defendants' arguments against certification at the

_____

FLSA collective action).

[106]   (R. Doc. 38-3, ¶52.)

[107]   (R. Doc. 1, Ex. 1, ¶14.)

[108]   (R. Doc. 38-3, ¶50.)

[109]   (R. Doc. 38-3, Ex. B, ¶17; Ex. C, ¶15.)

30

appropriate time, but to consider them now would be premature. Defendants' motion to dismiss plaintiffs' collective action claims is DENIED.

## 3. State Fraud Claim

Defendants also move to dismiss plaintiffs' state law fraud claim for failure to plead with the particularity required by Rule 9(b). For the following reasons, defendants' motion is granted.

Rule 9(b) provides that in fraud cases, "a party must state with particularity the circumstances constituting fraud or mistake." The required conditions of a person's mind, however, may be alleged generally.[110] In order to meet the requirements of Rule 9(b), a plaintiff must: (1) specify the statements alleged to be fraudulent, (2) identify the speaker or author of the statements, (3) state when and where the statements were made, and (4) state why the statements were fraudulent.[111] In other words, Rule 9(b) mandates that "the who, what, when, and where must be laid out before access to the discovery process is

---

[110]    Fed. R. Civ. P. 9(b).

[111]    *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009); *Herrmann Holdings, Ltd. v. Lucent Technologies Inc.*, 302 F.3d 552, 564-65 (5th Cir. 2002).

granted."[112]  The heightened pleading requirements of Rule 9(b)

also apply to plaintiffs' intentional misrepresentation claim,

which is "essentially an allegation of fraud."[113]

Here, plaintiffs' fraud and misrepresentation allegations

are limited to the following:

> Defendants engaged in a misrepresentation or a
> suppression of the truth made with the intention either
> to obtain an unjust advantage for one party or to cause
> a loss or inconvenience to the other.  More
> specifically, they misrepresented the compensation that
> Plaintiffs would receive as well as the quality of
> Plaintiffs' work via the charge-back scheme.  They
> regularly made unilateral and unsubstantiated
> deductions from wages associated with Plaintiffs' work.
> Such actions were done with the intention of gaining an
> unjust advantage and/or loss or inconvenience to
> Plaintiffs. . . . The net effect of Defendants' actions
> is to get work successfully completed, receive the
> benefit for such services being rendered, and then
> unilaterally reduce their costs under a fraudulent
> scheme designed to exploit and harm those performing
> work for their benefit in Louisiana.[114]

Plaintiffs' complaint is devoid of the particular factual

allegations required under Rule 9(b).  Plaintiffs do not identify

a particular fraudulent statement by an employee or officer of

any defendant.  The misrepresentations that plaintiffs allege are

---

[112]    *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 178
(5th Cir. 1997).

[113]    *Conerly Corp. v. Regions Bank*, No. 08-813, 2008 WL
4975080 (E.D.La. Nov. 20, 2008), quoting *Unimobil 84, Inc. v.
Spurney*, 797 F.2d 214, 217 (5th Cir. 1986).

[114]    (R. Doc. 1, ¶36.)

general in nature and do not specify a particular speaker, time, or place. When a plaintiff fails to "plead a description of a particular occasion in which a particular person made a fraudulent statement," the fraud claim must be dismissed.[115]

In addition, "a complaint alleging fraud may not group the defendants together."[116] Plaintiffs must plead specific facts as to each defendant for each of the Rule 9(b) requirements, but they have not done so. Instead, plaintiffs have improperly grouped the defendants together for purposes of their fraud allegations.

Plaintiffs' general allegations do not contain the particularity required by Rule 9(b). Moreover, the Court will not consider factual allegations that are not well-pleaded in plaintiffs' complaint and its proper attachments.[117] While plaintiffs have failed to meet the pleading requirements of Rule

---

[115] *Tigue Investment Co., Ltd. v. Chase Bank of Texas, N.A.*, No. Civ.A.3:03 CV 2490 N, 2004 WL 3170789 at *1 (N.D.Tex. 2004), citing *Southland Securities Corporation v. INSpire Insurance Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004).

[116] *Ingalls v. Edgewater Private Equity Fund III, L.P.*, 2005 WL 2647962 (S.D.Tex. Oct. 17, 2005), quoting *Glaser v. Enzo Biochem, Inc.*, 303 F.Supp.2d 724, 734 (E.D.Va. 2003), aff'd in part and rev'd in part on other grounds, 126 Fed. Appx. 593 (4th Cir. 2005); *Tigue Investment Co., Ltd.*, 2004 WL 3170789 at *1.

[117] *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).

9(b), such a failure does not usually justify dismissal without leave to amend.[118]  Accordingly, the Court GRANTS defendants' motion to dismiss plaintiffs' state law fraud claims, without prejudice and with leave to amend within 20 days.[119]

## C.    Motion to Strike State Law Class Action Claims

Defendants ask the Court to strike plaintiffs' class allegations on the grounds that the plaintiffs have not met the requirements of Rule 23.  Under Rule 23(d)(1)(D), a court may "require that the pleadings be amended to eliminate allegations about representation of absent persons."[120]  When it is "facially apparent" that Rule 23 cannot be met, "a district court may

---

[118]    *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000), citing *Cates v. International Tel. and Tel. Corp.*, 756 F.2d 1161, 1180 (5th Cir. 1985).

[119]    Defendants' argument that plaintiffs' class fraud and misrepresentation claims cannot meet Rule 23 is therefore moot, pending further amendment to the complaint.

[120]    *See Aguilar v. Allstate Fire and Cas. Ins. Co.*, No. 06-4660, 2007 WL 734809, at *3 (E.D.La. Feb. 6, 2007) (striking class claims on the pleadings under former Rule 23(d)(4) because "individualized and highly personal issues pertaining to each class member patently overwhelm any arguably common issues"); *Hedgepeth v. Blue Cross and Blue Shield of Miss.*, No. 1:05CV142-D-A, 2006 WL 141624 at *1 (N.D.Miss. 2006) (court has the power "to dismiss class allegations prior to any extensive class-related discovery taking place").

dismiss the class allegation on the pleadings."[121]  The Fifth

Circuit has observed, however, that "in most cases 'a certain

amount of discovery is essential in order to determine the class

action issue and the proper scope of a class action.'"[122]

To be certified, a class must satisfy the following

threshold requirements of Rule 23(a): (1) numerosity (a "class

[so large] that joinder of all members is impracticable"); (2)

commonality ("questions of law or fact common to the class"); (3)

typicality ("named parties' claims or defenses are typical . . .

of the class"); and (4) adequacy of representation

(representatives "will fairly and adequately protect the interest

of the class").[123]  In addition, the class must satisfy one of the

grounds listed in Rule 23(b).[124]  Rule 23(b)(3), which plaintiffs

appear to rely on, allows the Court to certify a class if

"questions of law or fact common to class members predominate

over any questions affecting only individual members, and . . . a

---

[121]    *John v. National Sec. Fire and Cas. Co.*, 501 F.3d 443,
445 (5th Cir. 2007).

[122]    *Stewart v. Winter*, 669 F.2d 328, 331 (5th Cir. 1982),
quoting *Pittman v. E. I. duPont de Nemours & Co.*, 552 F.2d 149,
150 (5th Cir. 1977).

[123]    *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613
(1997).

[124]    *Id.* at 614.

class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Because class members must opt out of a Rule 23 class action in order to preserve their individual claims, the standard for certification of a class action is stricter than the test for certification of an opt-in collective action under the FLSA.[125]

Defendants contend that common questions do not predominate over individual questions in this matter.  The predominance requirement, "although reminiscent of the commonality requirement of Rule 23(a), is 'far more demanding' because it 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'"[126]  In deciding at the class certification stage whether common questions predominate, the Court will "consider how a trial on the merits would be conducted if a class were certified."[127]  "This in turn, entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the

---

[125] *See Basco v. Wal-Mart Stores Inc.*, No. Civ.A. 00-3184, 2004 WL 1497709 at *4 n.6 (E.D.La. July 2, 2004); *Belbis v. Cook County*, No. 01C 6119, 2002 WL 31600048 at *1 (N.D.Ill. Nov. 13, 2002).

[126] *Unger*, 401 F.3d at 320 (quoting *Amchem Prods.*, 521 U.S. at 623-24).

[127] *Gene and Gene LLC v. Biopay LLC*, 541 F.3d 318, 326 (5th Cir. 2008).

issues are common to the class."[128]  This inquiry is necessary to
prevent the proceeding "from degenerating into a series of
individual trials."[129]

At this stage of the proceedings, plaintiffs have
sufficiently alleged that common questions predominate over
individual questions.  Plaintiffs seek to represent a class of
"[a]ll persons who have performed installation and service of
DirecTV satellite systems in the state of Louisiana."[130]  They
allege that common questions of law and fact predominate over
individual questions.[131]  In particular, plaintiffs allege that
the defendants engaged in a common "charge-back scheme" in which
they made deductions from the paychecks of their installers and
technicians in violation of Louisiana wage-and-hour and tort
law.[132]  Whether the defendants applied such a general policy
presents a common question.

Defendants make a number of arguments against class
certification, but these arguments are premature.  Plaintiffs

---

[128]    *Id.*

[129]    *Id.*

[130]    (R. Doc. 1, Ex. 1, ¶38.)

[131]    *Id.* at ¶43.

[132]    *Id.* at ¶28 and ¶40(a).

have not moved for class certification, and the record is not sufficiently developed for the Court to determine whether class certification would be appropriate.[133] Defendants argue, for example, that whether class members were employed by any or all of the defendants presents individual rather than common questions. Plaintiffs argue, however, that the DirecTV workforce is uniform throughout the state, and the degree of control that DirecTV had over its technicians may be a common question.[134] Defendants also argue that individualized determinations of liability and damages will be required, but the Court presently lacks the information to evaluate that argument. Whether common questions will predominate over individual question depends upon how plaintiffs intend to prove their case, but plaintiffs are not required to present their trial plan in the complaint. Plaintiffs' class action claims are not facially insufficient,[135]

---

[133] *See Pinero v. Jackson Hewitt Tax Service Inc.*, 594 F.Supp.2d 710, 723-24 (E.D.La. 2009) (insufficient record to decide class certification motion).

[134] *See Smith v. Cardinal Logistics Management Corp.*, No. 07-2104 SC, 2008 WL 4156364 at *9-10 (N.D.Cal. Sept. 5, 2008) (certifying Rule 23 class of truck drivers where plaintiffs presented evidence of defendant's control over class members; holding that the question of control was largely a common issue).

[135] *See Doyel v. McDonald's Corp.*, No. 4:08-CV-1198 CAS, 2009 WL 350627 at *5-6 (E.D.Mo. Feb. 10, 2009) (class action survived motion to dismiss even though it would be difficult for plaintiffs to avoid case-by-case analysis of their "off-the-

and the Court therefore DENIES defendants' motion to strike the class allegations.

## IV. CONCLUSION

For the reasons stated, the Court DENIES plaintiffs' motion to remand their state class action claims, GRANTS plaintiffs' motion for leave to file an amended complaint, GRANTS IN PART and DENIES IN PART defendants' motion to dismiss certain claims, and DENIES defendants' motion to strike the class action claims.

New Orleans, Louisiana, this 13th day of August, 2010.

_Sarah Vance_

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

clock" overtime claims; resolving doubts in favor of plaintiffs); *Stewart v. Winter*, 669 F.2d 328, 331 (5th Cir. 1982) (some discovery usually required prior to deciding whether a class action is appropriate); *McCormick v. Festiva Development Group, LLC*, No. 09-365-P-S, 2010 WL 582218 at *9 (D.Me. Feb. 11, 2010) (denying motion to dismiss class minimum wage and overtime claims prior to discovery); *Cohen v. Gerson Lehrman Group, Inc.*, 686 F.Supp.2d 317, 324 (S.D.N.Y. 2010) (same); *cf. Xavier v. Belfor Group USA, Inc.*, 254 F.R.D. 281 (E.D.La. 2008) (granting motion to dismiss multi-state overtime class action because issues were too individualized).