UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CHRISTIAN LANG, et al., | * | CIVIL ACTION |
| | * | |
| Plaintiffs, | * | NO. 10-1085 |
| | * | |
| v. | * | SECTION "R" |
| | * | CHIEF JUDGE VANCE |
| DIRECTV, INC., et al., | * | |
| | * | MAG. DIV. (1) |
| Defendants. | * | MAG. JUDGE SHUSHAN |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM OF AUTHORITIES IN SUPPORT OF MOTION FOR CONTINUATION OF TRIAL DATE AND REQUEST FOR STATUS CONFERENCE

MAY IT PLEASE THE COURT:

Plaintiffs seek expedited review of this Motion due to the deadlines fast approaching in the scheduling order and the potential prejudice to various parties if quick resolution of these matters is not had. Plaintiffs indicated they thought extension of the scheduling order and the trial date was appropriate when they learned that a Defendant (Modern Day Satellite) and the crucial witness David Esposito were unavailable and unrepresented. They sought a stipulation from opposing counsel to extend the scheduling order and trial date but were met with a delay while opposing counsel conferred with their remaining clients and then returned with a demand to drop certain causes of action in return for agreeing to the stipulation. *See*, Exhibit "A". Counsel for the Plaintiffs declined the offer of opposing counsel and indicated his intention to file a Motion seeking the continuation of the trial date and extension of the scheduling order. Undersigned counsel has been unable to get in touch with Modern Day to get their position on this motion.

Plaintiffs, satellite technicians, brought their case under the Fair Labor Standards Act, 29 U.S.C. §201, et seq. ("FLSA"), and under Louisiana Wage and Hour Law, La. R.S. 23:631, et seq. and under various general Louisiana tort law principles. Plaintiffs were employed by the Defendants at various times during the relevant three year time period as "Technicians," and/or "Installers," in the Defendants' businesses of providing DirecTV services to the general public. One of the key tenets of the technicians' Complaint was the belief that DirecTV used entity confusion and manipulation on a nationwide basis to reduce their labor costs and harm them and similarly situated technicians in violation of state and federal law.

The sequence of events after the Plaintiffs filed suit are disturbing and all too common in suits involving satellite technicians who do work on DirecTV installs. On the day the Plaintiffs served the lawsuit on Modern Day Satellite (Modern Day), they became unemployed as Modern Day reacted by fleeing the jurisdiction, leaving behind an empty warehouse and no recourse for the unpaid technicians. *See*, Exhibit "B". Modern Day eventually resurfaced as a party who was jointly represented by DirecTV's counsel of choice. Undersigned counsel expressed concern about this arrangement in previous pleadings and those concerns came to fruition when DirecTV's counsel withdrew as counsel for Modern Day Satellite at a crucial point in the scheduling order (January 4, 2011). [DOC 43].

As it stands now, Modern Day is unrepresented and communication with them, as well as whether they will participate in this proceeding, is uncertain. We have a Defendant corporation whose sole proprietor, David Esposito, is a key witness. They have suddenly vanished with little time left in the scheduling order to find them and depose them. It will be difficult at best, and an undue prejudice to Modern Day and the Plaintiffs, to proceed in accordance with the existing scheduling order and the presently set trial date.

To further complicate matters, after suit was filed, DirecTV bought JP & D Digital Satellite Systems, Inc. This stock buyout purchase has conveniently made discovery of matters at JP & D during the relevant time periods, problematic at best. Counsel has been seeking emails/correspondence that impaired on the technicians' ability to work as a result of their invoking their rights under the FLSA since August of 2010. *See*, Exhibit "C". These have been denied via interrogatory responses and even in responses to requests for admissions. *See*, Exhibit "D". Plaintiffs have been seeking this evidence for the entirety of the existing scheduling order and the existence of such evidence has been continually denied by JP & D throughout this litigation.

After the close of business on Friday January 7, 2011, Defendants produced over 1200 documents, without documenting what discovery requests the documents were responsive to. Inside the document production were documents marked JP880-882 which were marked "confidential, subject to protective order", *See*, Exhibit "E". The Defendants apparently marked every document produced as "confidential, subject to protective order" but failed to "state the reason(s) that it believes the disclosure might be improper or unlawful at the time they asserted the confidentiality" for any of the documents produced. See, Protective Order requirements for confidentiality, [Doc 48] at paragraph 3. Inside these documents were the following two emails:

> **From:** Tammy Wise [mailtotammywise@jpdds.com]
> **Sent:** Monday, March 15, 2010 3:43 PM
> **TO:** TechManagement; 'Joseph Stephen'; tracey.allen@jpdds.com
> **Subject:** RE: Did these former Modern Day techs come In-House?
>
> Please make sure that all 4 of these names are not working in-house nor for a subco. If the technician has a question about why he's not being allowed to work for JP&D, please give him my name and number.
>
> Christian Lang
> Ed Dwayne Humphrey
> Larry Tucker
> Gary Smith

**From:** Tech Mangement [mailto:techmanagement@jpdds.com]
**Sent:** Monday, March 15, 2010 4:09 PM
**To:** Tammy Wise; 'Joseph Stephen'; tracey.allen@jpdds.com
**Cc:** 'Tech Management'
**Subject:** RE: Did these former Modern Day techs come In-House?

All have been deactivated in STT & Siebel and have also been added to the NO-Hire List

<u>Tech Management</u>

      Tammy Wise is listed as the Vice President of JP & D with the Texas Secretary of State. She is believed to be the wife of the President of JP & D, Jerry Wise. ***See***, Exhibit "F". Other discovery responses make it clear that she was actively involved in the day to operations at JP & D. Her email and the response of "Tech Management" indicates that on March 15, 2010, three (3) days after their agent for service of process was served with the lawsuit invoking the Plaintiffs rights under the FLSA, all four (4) of the named Plaintiffs were blackballed from all work in regions where JP & D had a presence. ***See***, Exhibit "G".[1] In fact, an email correspondence from Wise to undersigned counsel, indicates JP & D had received the lawsuit from their agent for service of process on March 15 – the very day she instructed JP & D to ban all four named Plaintiffs from working on DirecTV jobs. ***See***, Exhibit "H".

      JP & D sent a bold message to every technician in America, if you assert your rights under the FLSA, you will lose your job and go on the "no-hire" list. Talk about a chilling effect on the rights guaranteed under the FLSA! Technician Gary Smith was not even a current employee of JP & D or Modern Day Satellite. His inclusion in the retaliatory email makes it painfully obvious that the four named Plaintiffs were being singled out for filing the lawsuit.

---

[1] JP & D has had operations in Louisiana, Texas, Oklahoma, Arkansas, New Mexico, Mississippi, Arizona and Colorado. While it is not clear of the exact geographic scope of their operations on March 15, 2010, it is clear that these satellite technicians (based out of Hammond, Louisiana) were made unemployed and blackballed by the independent and combined actions of JP & D and Modern Day shortly after they asserted their rights under the FLSA by serving the entities with their lawsuits.

Obviously, this email opens the door to discovery of significant issues including: 1) Where are the emails to the subcontractors that have been requested (testified to in Christian Lang's deposition and sworn to under oath as existing via the Christian Lang affidavit? ***See***, "I"; 2) Who is Joseph Stephen?; 3) Who is TechManagement?; 4) who is tracey.allena@jpdss.com?; 5) Why is the email that went to Modern Day "making sure" these four Plaintiffs were not working within the JP & D regions not produced?; 6) What connection did the buyout of JP & D by DirecTV have to these events?; 7) What steps did DirecTV take to preserve this type of evidence; 8) What steps to DirecTV take to rectify this injustice once they became aware of it?; and 8) Why did JP&D respond to the Request for Admissions proffered by the Plaintiffs on August 27, 2010 as follows?:

ADMIT pursuant to Rule 36, FRCivP that:

REQUEST FOR ADMISSION NO. 1:

That you communicated in 2010 to any entity or person referencing a named plaintiff (either by name or tech number) and impeding them from doing work assignments on DirecTV customer sites.

*Based on lack of information, including an ability to respond given that the persons with any such knowledge do not work for JP & D, JP & D denies the allegations in Request for Admission No. 1 as stated. JP & D also refers the plaintiffs to the documents to be produced in discovery.*

REQUEST FOR ADMISSION NO. 2:

That you have knowledge of any 2010 communication to any entity or person referencing a named plaintiff (either by name or by tech number) and impeding them from doing work assignments on DirecTV customer sites. For purposes of the Request, exclude any knowledge that is solely based upon pleadings or communications between attorneys in this litigation.

*Based on lack of information, including an ability to respond given that the persons with any such knowledge do not work for JP & D, JP & D denies the allegations in Request for Admission No. 2 as stated. JP & D also refers the plaintiffs to the documents to be produced in discovery.*

Undersigned counsel respectfully suggests that responses such as this are crippling the orderly discovery of relevant evidence in this proceeding. This newly discovered evidence, and the bevy of new witnesses it creates has visited undue prejudice upon the Plaintiffs and crys out for additional discovery. It also casts doubt on the ESI collection techniques employed by the defendant corporations.

It should be noted that Modern Day unequivocally *denied* the exact same Requests for Admission despite Lisa Vides (former office manager at Modern Day) telling Christian Lang that he could not work for JP & D or JP & D subcontractors.[2] Christian Lang testified at his January 13, 2011 deposition that he was shown two emails by Michael Norman of TruFocus, LLC, a subcontractor who he tried to get a tech number through after he suddenly became unemployed. Both emails were from corporate officers at JP & D (Tammy Wise). One email specifically stated that Christian Lang could not be issued a tech number because "he had taken legal action against JP & D." The frequency and severity of these types of disingenuous responses, and failure to produce the relevant documents are the types of misleading discovery responses by defendants that support granting the requested relief.

The Plaintiff satellite technicians have substantial rights at stake. If this arrogant and brazen retaliation against them is tolerated, DirecTV, its HSPs and their subcontractors will be emboldened. They will continue to exploit the technicians across the country, feeling that, even if they get caught, creative discovery strategies will allow them to avoid responsibility for their actions in violation of clearly established federal law. The Plaintiffs simply want to traverse the

---

[2] Christian Lang testified in his deposition on January 13, 2011 that he was told this by Lisa Vides, Modern Day's office manager, when he reported to work to find out Modern Day was in the process of packing up and leaving the jurisdiction on March 16, 2010. Plaintiffs have requested expedited processing of the deposition and expect to receive a copy on Tuesday, January 18, 2011. They will supplement the record at that time.

discredited discovery responses of the defendants, depose the parties, and do a reasonable amount of follow up discovery so that can explore: 1) the extent of the blackballing and retaliation against the named plaintiffs; 2) the details, timing, reasons and liability implications of the buyout of JP &D; 3) the current and past positions of Modern Day in all of this; 4) the involvement of DirecTV and/or other Defendants in orchestrating these "defenses"; and 5) the breadth of such behavior within the DirecTV empire.

To date Defendants have only produced documents that in their words "relate to the named plaintiffs." Documents that relate to the collective action and the state law class action have been relegated to another category. This category is "documents we have that are related to your claims but that we won't formally produce."  These documents include several boxes of papers that shed light on JP & D's relationships with its subcontractors, other than Modern Day. These are the very same subcontractors to whom JP & D circulated their retaliatory instructions banishing the named Plaintiffs from the industry. Plaintiff would like to explore if these subcontractors have received the illegal communications and if they have employees who have received similar treatment. Despite this obvious relevancy, undersigned counsel has been informed by opposing counsel "I have described the documents in detail for you.  I don't think they are relevant.  The defendants do not intend to use them for any purpose.  I don't think they should be part of the litigation, and we are not producing them."

Amazingly, no document has been produced by any defendant that has been acknowledged to be responsive to any discovery obligation or a request by the Plaintiffs. There have been no documents that have been tied to various discovery requests Plaintiffs have made in the litigation. Defendants have simply document dropped excessive numbers of documents,

7

marked them all confidential, and not annotated in any way why the documents are confidential or what the documents are responsive to.[3]

Plaintiff's counsel has been repeatedly told that a witness with first-hand knowledge of JP & D during the relevant time periods is unavailable and that someone from DirecTV will have to testify "as best they can" at the crucial 30(b)(6) depositions of JP & D. This further opens the door to an inquiry into the details of the post litigation purchase of JP & D by DirecTV. What provisions were made to secure evidence? What provisions were made to secure relevant testimony, data, correspondence, etc… How much money changed hands between two co-defendants in the middle of a lawsuit where the allocation of fault amongst them is an issue?

It is clear to undersigned counsel that we have a tiger by the tail. Discovery is unfortunately, going to be hand to hand combat. While experienced in Federal Court and acquainted with aggressive defense tactics to deter discovery, the level of resistance in the case at bar is a new experience. Nevertheless, his clients' cause is just. In recognition of this, Plaintiffs have approached other firms that have experience in large FLSA collective actions and have received interest from them. The proposed dates will allow Plaintiffs to bring forward a team that can combat the substantial resources of DirecTV and protect the Plaintiffs' rights by demonstrating to the Court by the April 8, 2010 deadline, that a proposed collective action has merit and is backed by the necessary legal skill and resources to ensure the Plaintiff's don't die of litigation exhaustion by simply being outspent.

Plaintiff respectfully requests that the trial date be continued and that the Court set a status conference to discuss outstanding discovery issues and formulate an amended scheduling

---

[3] The parties participated in a Rule 37 conference on Friday January 14th and Monday, January 17th at 10:00 A.M. Several disagreements went unresolved and the Plaintiffs, unfortunately,  anticipate filing significant Motions to Compel this week.

order. In all honesty, Plaintiff realizes setting a trial date on such a complex matter, is probable unrealistic and that proper prosecution of the action will require the proposed amended discovery deadlines and rulings on scope and conditional certification before a realistic trial date can be set. We respectfully suggest adoption of an amended scheduling order that contains the following information and moves all scheduling order deadlines forward six (6) months:

*Litigation Hold and E-discovery Issues*: A litigation hold letter was delivered to the Defendants on March 29, 2010. See attached Exhibit "x." Plaintiffs seek cooperation from the Defendants in: 1) Identifying key custodians of relevant information; 2) Defining collection and preservation procedures; 3) Defining review and production methodology; 4) Identifying relevant systems; 5) Exchanging relevant IT information so as to facilitate the efficient and accurate exchange ESI evidence; and 6) identifying the date that the duty to preserve IT information attached. It is agreed that ESI should be preserved in its originally created, or "native" format.

The parties have exchanged initial disclosures in accordance with Federal Rule of Civil Procedure 26(a)(1) and are under a continuing obligation to supplement such disclosures when necessary.

*Motion for Court Supervised Notice*: Plaintiffs shall file their Motion for Expedited Court Supervised Notice to Prospective Class Members on or before May 8, 2011.

Extended discovery time is within the discretion of the Court. Plaintiffs indicated they thought extension of the scheduling order and the trial date was appropriate when they learned that a Defendant (Modern Day Satellite) and the crucial witness David Esposito were unavailable and unrepresented.   Whether to grant a motion to continue a trial is within the sound discretion of the trial court. Ungar v Sarafile, 376 U.S. 575, 589 (1964). It is particularly appropriate when there has been misconduct by an opposing party. See, e.g., Conway v. Chem. Leaman Tank Lines, Inc., 687 F.2d 108, 112 (5th Cir. 1982). It is appropriate when there are newly discover parties, witnesses, or evidence. Menendez v. Perishable Distrib., Inc. 763 F.2d 1374, 1379 (11th

Cir. 1985); <u>Good v. Pennsylvania R.R. Co.</u>, 263 F.Supp. 84, 88 (E.D. Pa. 1967). It is also warranted when there is an unavailability of a crucial witness or party. <u>Fenner v. Dependable Trucking Co., Inc.</u>, 716 F.2d 598, 600 (9th Cir. 1983).

Extending a scheduling order is also within the discretion of the trial court and should be granted when failure to so will visit undue prejudice to a party. <u>Howze v. Jones & Laughlin Steel Corp.</u>, 750 F.2d 1208, 1213 (3rd Cir. 1984). Plaintiffs respectfully suggest failure to grant the requested extension would visit undue prejudice upon Modern Day Satellite and the Plaintiffs. As it sits right now, no one even knows if Modern Day Satellite will show for depositions or trial.[4]

Additionally, the recent delivery of discovery that contradicts previous responses and implicates the pled retaliation - creates the need for significant additional discovery. The expectation of outstanding discovery is cause to extend a scheduling order. <u>National R.R. Passenger Corp. v. Notter</u>, 677 F. Supp 1, 8 (D.D.C. 1987).

Plaintiffs respectfully ask this Honorable Court to continue the trial date in the interests of justice so that they can protect their own rights, the rights of those individual similarly situated, and the rule of law. These are complex cases and a review of similar claims in other jurisdictions shows discovery is often ongoing for several years. The original scheduling order and trial date was unrealistic and undersigned counsel takes full responsibility for his part in not arguing for a more realistic timetable. That being said, the FLSA specifically states:

> **§215(a)(3)** …it shall be unlawful for any person – to discharge or in any other manner discriminate against any employee because

---

[4] Counsel for the Defendants DirecTV and JP & D has indicated they have no objection to extending the pretrial deadlines as long as the extensions did not upset the trial date. That offer may not provide much relief due to lack of wiggle room in the current scheduling order. Nevertheless, if the Court is inclined to deny the Motion to Continue, Plaintiffs would ask that it extend the pre-trial deadlines as far forward as possible without upsetting the trial date. This alternative request is unopposed although no one knows the position of defendant Modern Day Satellite.

such employee has filed any complaint or instituted or caused to be
instituted any proceeding under or related to this chapter….

The penalties for violations of this section are severe. We have a prima facie case of a violation of Section 215(a)(3), here, in the case at bar. This is a significant matter and Plaintiffs respectfully ask the Court to continue the trial date and set a status/scheduling conference to make sure that interests of justice are served and the Plaintiffs are not unduly prejudiced by the unjustified delays in admitting that the retaliation occurred, the last minute orphaning of Modern Day Satellite as defendant, and the unduly burdensome discovery tactics of the Defendants.

This is a serious matter with important implications to workers and businesses. It deserves a full and fair vetting of the issues and an opportunity for all parties to present their positions in open Court and let the chips fall where they. Plaintiffs respectfully suggest that granting the Motion to Continue serves the interests of justice and always us all to sort out the very complex issues and participate in important litigation that may define important aspects of how workers are treated in the satellite industry for years to come.

Respectfully submitted,

/S/ Jesse B. Hearin, III

Jesse B. Hearin, III, La. Bar Roll No. 22422
1009 Carnation Street, Suite "E"
Slidell, Louisiana 70460
(985) 639-3377; Fax: 877-821-8015
jbhearin@hearinllc.com

**<u>CERTIFICATE OF SERVICE</u>**

     I hereby certify that I have this 17th day of January, 2011, served the foregoing, to the following via email and/or the ECF system:


Steven F. Griffith, Jr., Esq.           Moderndaysat@aol.com
201 St. Charles Avenue, Suite 3600     davidesposito34@yahoo.com
New Orleans, Louisiana 70170        Modern Day Satellite/ David Esposito
*Counsel for DirecTV and JP & D*


               <u>/S/ Jesse B. Hearin, III,</u>