```
             UNITED STATES DISTRICT COURT
             EASTERN DISTRICT OF LOUISIANA
```

CHRISTIAN LANG, ET AL.                           CIVIL ACTION

VERSUS                                           NO: 10-1085

DIRECTV, INC., ET AL.                            SECTION: R(1)

### ORDER AND REASONS

In this Fair Labor Standards Act (FLSA) and Louisiana Wage Payment Act (LWPA) case, defendants DirecTV, Inc. and JP&D Digital Satellite Systems, Inc. move for partial summary judgment seeking dismissal of the claims asserted by plaintiffs Christian Lang, Larry Tucker, and Edward Dwayne Humphrey.[1]  Because there are genuine issues of fact as to whether Lang, Tucker, and Humphrey are employees under the FLSA and LWPA, defendants' motion is DENIED.

### I.   Background

Plaintiffs are satellite television technicians who installed DirecTV systems at customers' houses.  DirecTV is the largest provider of satellite television services in the United States.  DirecTV provides for the installation and maintenance of its systems in customers' homes by directly hiring thousands of technicians and by contracting with entities known as Home

---

[1] R. Doc. 101.  Defendants have not moved to dismiss the claims of the fourth plaintiff, Gary Smith.  Further, defendant Modern Day has not joined in this motion.

Service Providers (HSPs). JP&D was an HSP for DirecTV, and for a time, Modern Day was also an HSP. For most of the time period at issue, however, Modern Day was a subcontractor under JP&D. Lang and Humphrey began working under Modern Day in 2007, and Tucker began doing so in March 2008.

Plaintiffs filed this action in state court on February 22, 2010, and defendants removed the case to this Court.[2] Plaintiffs bring a collective action under the FLSA, alleging that they are employees of defendants and that defendants engaged in minimum wage, overtime, retaliation, and record-keeping violations. Plaintiffs also bring a class action for alleged violations of the Louisiana wage and hour laws and for state law tort violations. First, plaintiffs allege that the defendants failed to record or pay wages, or deducted wages, for time actually worked. These uncompensated hours include time worked before the first and after the last customer visit of the day, travel time, and meal periods during which work was performed. Second, plaintiffs allege that the defendants failed to calculate the applicable overtime rate properly. Third, plaintiffs allege that the defendants engaged in a "charge-back scheme" in which they improperly withheld certain amounts from plaintiffs' pay. At times, plaintiffs allege, they were charged more than they earned and therefore lost money on a particular job.

---

[2]   R. Doc. 1.

On August 13, 2010, the Court dismissed plaintiffs' state law fraud claim but otherwise denied defendants' motions to dismiss.[3] In particular, the Court ruled that plaintiffs adequately alleged that they were employed by defendants. The Court then granted plaintiffs' *ex parte* motion to dismiss their intentional infliction of emotional distress, negligent infliction of emotional distress, and conversion claims.[4] DirecTV and JP&D now move for partial summary judgment on the grounds that plaintiffs were independent contractors rather than employees of Modern Day.

## II.  Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."  *Delta & Pine Land Co. v. Nationwide*

---

[3]     R. Doc. 42.

[4]     R. Doc. 142.

3

*Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."  *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"  *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991).  The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."  *Id*. at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.  *See Celotex*, 477 U.S. at 325.  The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts

showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075; *Isquith for and on Behalf of Isquith v. Middle South Utils., Inc.*, 847 F.2d 186, 198 (5th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988).

**III. Discussion**

*A. Timing of Motion*

Plaintiffs argue that the motion for partial summary judgment is premature and that they should be given the opportunity to conduct further discovery on the issue of whether they are employees or independent contractors. Under Fed. R. Civ. P. 56(d), a court may defer consideration of a motion for summary judgment if the opposing party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition[.]" To obtain such a continuance, the party must indicate "why he needs additional discovery and *how* the additional discovery will create a genuine issue of material fact." *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1442 (5th Cir. 1993) (emphasis in original).

In this case, plaintiffs have had ample time in which to conduct discovery. Plaintiffs filed this case over a year ago, on February 22, 2010, and the first scheduling order was issued

5

on May 27, 2010.[5]  When the original discovery deadline approached, the Court granted plaintiffs' motion to continue the trial and all pre-trial deadlines for approximately six months.[6] At the last hearing in this matter, plaintiffs were allowed an extension to submit the "blast facts".[7] Defendants' motion for partial summary judgment is by no means premature, and plaintiffs have had adequate time to conduct discovery.  The Court therefore DENIES plaintiffs' request to defer consideration of the motion.

*B.   Employment Status under the FLSA*

DirecTV and JP&D contend that plaintiffs are independent contractors rather than employees of Modern Day and therefore are not covered by the FLSA.  *See Weisel v. Singapore Joint Venture, Inc.*, 602 F.2d 1185, 1188 (5th Cir. 1979) (FLSA covers only employees).  Defendants ask the Court to limit its inquiry to the relationship between plaintiffs and Modern Day and not to consider whether defendants are joint employers.  When joint employment exists, however, courts consider the relationship among the plaintiffs and all of the joint employers in determining whether the plaintiffs are employees or independent contractors.  *See Schultz v. Capital Intern. Sec., Inc.*, 466 F.3d 298, 307 (4th Cir. 2006) ("Because [defendants] were joint

---

[5]   R. Doc. 26.

[6]   R. Doc. 74.

[7]   R. Doc. 124.

employers of [plaintiffs], the employment arrangement must be viewed as "one employment" for purposes of determining whether [plaintiffs] were employees or independent contractors under the FLSA.") (citing 29 C.F.R. § 791.2(a)); *see also Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 67-68 (2d Cir. 2003) (unlike the joint employment issue, the independent contractor issue requires a determination of whether a worker is "independent of *all* employers") (emphasis in original). Limiting the analysis to plaintiffs' relationships with Modern Day would effectively be to assume that DirecTV and JP&D are not joint employers of plaintiffs, and the Court cannot make such an assumption at this juncture. *See Schultz,* 466 F.3d at 305-07 (finding that the district court erred in its analysis when it compared the control one alleged employer exerted over the manner of work in comparison to another employer because the proper inquiry requires a determination of the total control of the alleged employers in comparison to the control exerted by the worker). Therefore, for purposes of deciding this motion for summary judgment, the Court must view the working relationship between each plaintiff and all three defendants as "one employment."

The FLSA defines "employee" as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), and "employ" as "to suffer or permit to work." *Id.* § 203(g). The Supreme Court has observed that this definition is broad. *Rutherford Food Corp. v.*

7

*McComb*, 331 U.S. 722, 728 (1947). In determining whether an employment relationship exists, the Court must "focus on whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself." *Hopkins v. Cornerstone America*, 545 F.3d 338, 343 (5th Cir. 2008). The Court is guided by the following non-exclusive factors: "(1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship." *Id.* There is no single determinative factor in this analysis, and the Court must consider the economic relationship as a whole. *Thibault v. Bellsouth Telecommunications, Inc.*, 612 F.3d 843, 846 (5th Cir. 2010).

Courts that have examined whether satellite and cable installers are employees under the FLSA have reached mixed results. *Compare Freund v. Hi-Tech Satellite, Inc.*, 185 Fed.Appx. 782 (11th Cir. 2006) (holding that satellite installer was independent contractor); *Herman v. Mid-Atlantic Installation Services, Inc.*, 164 F.Supp.2d 667 (D.Md. 2000), *aff'd*, 16 Fed. Appx. 104 (4th Cir. 2001) (cable installers were independent contractors); *and Dole v. Amerilink Corp.*, 729 F.Supp. 73 (E.D.

Mo. 1990) (same); *with Parrilla v. Allcom Const. & Installation Services*, No. 6:08-cv-1967-Orl-31GJK, 2009 WL 2868432 (M.D. Fla. Aug. 31, 2009) (holding that cable installer was employee); *and Santelices v. Cable Wiring*, 147 F.Supp.2d 1313, 1323 (S.D. Fla. 2001) (genuine issue of fact as to whether cable installer was employee).  Whether an individual is an employee or an independent contractor is highly dependent on the specific context in which an individual performs his work.  *Thibault*, 612 F.3d at 848.  In addition, it is difficult to generalize from the case law on independent contractor versus employee status because the courts are not consistent in the degree of emphasis they place on the different factors in the analytical mix.  On the record presented here, the Court finds that disputed issues of material fact prevent the Court from accurately assessing the economic relationships among these parties as a whole.  The Court will address these factual issues below.

  I. Degree of Control

    The Fifth Circuit has made clear that "[c]ontrol is only significant when it shows an individual exerts such a control over a meaningful part of the business that she stands as a separate economic entity."  *Hopkins v. Cornerstone America*, 545 F.3d 338, 343 (5th Cir. 2008) (quoting *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1049 (5th Cir. 1987)).  In this case, there

is a genuine issue of material fact as to the nature and degree of the control that defendants exerted over plaintiffs.

Defendants exercised some control over plaintiffs in the course of the workday. The process of assigning technicians to jobs was performed at first by Modern Day, and later by DirecTV's Siebel software program.[8] On a typical workday, plaintiffs were required to be at Modern Day's office at 7:00 a.m. sharp, or as early as 6:00 a.m. if meetings were scheduled.[9] Defendants then assigned plaintiffs to windows in which jobs were to be performed, from 8:00 a.m. to 12:00 p.m., 12:00 p.m. to 5:00 p.m., and 4:00 p.m. to 8:00 p.m.[10] Plaintiffs could choose the order in which they performed jobs within a given window.[11] *See Hathcock v. Acme Truck Lines, Inc.*, 262 F.3d 522, 527 (5th Cir. 2001) (truck driver who had the "ability to pick his delivery route and work details" was nonetheless an employee).

Plaintiff Edward Dwayne Humphrey states that DirecTV's policy, passed down by JP&D and Modern Day, was that technicians would be fired if they did not work evening jobs.[12] Humphrey's

---

[8] R. Doc. 98, Ex. 6 (Declaration of Mary Ellen Baumgardt), ¶4.

[9] Tucker Deposition at 80.

[10] R. Doc. 133, Ex. A (Humphrey Deposition), at 55.

[11] R. Doc. 114, Ex. D (Lang Deposition), at 49-50; R. Doc 133, Ex. B (Tucker Deposition), at 83.

[12] Humphrey Deposition at 55.

assertion, if proven, could indicate that defendants exerted significant control over plaintiffs' workdays.  It is true that a company may choose not to hire an independent contractor who refuses to take on unpleasant tasks, such as working in the evenings.  Nonetheless, defendants' alleged control over what shifts plaintiffs worked is more characteristic of an employer-employee relationship than an independent contractor relationship.  *Cf. Santelices*, 147 F.Supp.2d at 1321 (evidence of purported employer's control included cable installer's belief that he would be fired for any absence).

Plaintiffs have also provided a number of DirecTV publications specifying how technicians were required to perform a wide variety of tasks.[13]  For example, plaintiffs have provided an email from DirecTV entitled "Blast Facts" which specifies, among other things, that a second opinion is required whenever a technician determines that there is no line of sight for an installation.[14]  Another memorandum specifies that technicians must spend at least 20 minutes on customer education at each job site.[15]  The parties dispute whether these directives actually reached the technicians.

---

[13]   R. Doc. 126, Ex. E.

[14]   *Id.* at 5.

[15]   *Id.* at 21.

Technical specifications, such as those that appear in the Blast Facts and the other memoranda sent out by DirecTV, do not necessarily render the plaintiffs employees. Defendants could require technicians, whether employees or independent contractors, to perform their tasks in accordance with specifications. As the court noted in *Herman v. Mid-Atlantic Installation Services, Inc.*, 164 F.Supp.2d 667, 672-73 (D.Md. 2000), a painter does not become an employee simply by painting a house the color directed by a homeowner. Nonetheless, by setting out the minimum number of minutes that technicians were required to provide customer education, and by requiring a second opinion before a technician could decide that there was no line of sight for an installation, these memoranda create an issue of fact as to whether defendants went beyond providing mere technical specifications. *See Carrell v. Sunland Const., Inc.*, 998 F.2d 330, 334 (5th Cir. 1993) (citing *Robicheaux v. Radcliff Material, Inc.*, 697 F.2d 662, 667 (5th Cir. 1983)) (defendant's instructions as to how long an assignment should take was an indication of an employer-employee relationship). Whether these directions were passed down to plaintiffs, and the extent to which plaintiffs retained discretion in performing their jobs, are disputed issues of fact.

Further, defendants deducted fees from plaintiffs pay when defendants were dissatisfied with the results of quality control

checks.  According to plaintiffs, these fees sometimes exceeded the amounts that plaintiffs earned per job.[16]  In addition, plaintiffs stated that they were unable to complain to DirecTV regarding the assessment of fees[17] and that the deductions originated with DirecTV.[18]  Controlling technicians by imposing penalties for failing to meet specifications is not incompatible with an independent contractor relationship, as a hiring party may withhold funds from an independent contractor when work is late or not done properly.  *See Herman*, 164 F.Supp.2d at 673.  An arrangement in which defendants charged plaintiffs more than they earned for a particular job, however, would undermine plaintiffs' economic independence in a more serious way.  *See Parrilla*, 2009 WL 2868432, at *3 (charge-backs that exceeded amounts technicians were supposed to receive per job demonstrated employer's control).  Although DirecTV representative Lee Branning asserts that deductions were not generally made per job, apart from deductions for failing to meet the "on-time guarantee,"[19] whether defendants regularly "charged back" plaintiffs more than they earned for a given job is a disputed issue of material fact.

---

[16]   Humphrey Deposition at 241.

[17]   Lang Deposition at 198; Humphrey Deposition at 243.

[18]   Lang Deposition at 148-151.

[19]   R. Doc. 114, Ex. C (Branning Deposition) at 86.

13

Thus, material facts remain in dispute, including whether defendants threatened to fire technicians who did not work evening shifts, whether plaintiffs received DirecTV's Blast Facts and other memoranda, the degree of discretion that plaintiffs retained in performing their jobs, and whether plaintiffs were "charged back" more than they earned on particular jobs. The Court is therefore unable to determine whether plaintiffs acted under the defendants' control as a matter of summary judgment.

### ii. Opportunity for Profit or Loss

The record is likewise conflicting on the extent to which defendants controlled plaintiffs' opportunities for profit or loss. Defendants set the job assignments for each technician, and plaintiffs generally followed those assignments, although trades were possible.[20] Defendants paid plaintiffs set amounts per job, and there is no indication that plaintiffs could negotiate the prices they received for standard jobs.[21] Further, even in the instances when plaintiffs did custom work, DirecTV had to approve what they charged for it.[22]

Plaintiffs did have the opportunity to obtain more jobs, and thus more profit, if they efficiently completed the jobs they

---

[20] Humphrey Deposition at 55; Tucker Deposition at 86.

[21] Lang Deposition at 68-9; Humphrey Deposition at 131-32.

[22] R. Doc. 126-8, Ex. E.

14

were assigned.[23]  Humphrey, for example, agreed with the characterization that he sometimes worked harder to get more jobs, and that at other times willingly took a lighter load.[24]  The Fifth Circuit has ruled, however, that "initiative, not efficiency determines independence."  *Hathcock v. Acme Truck Lines, Inc.*, 262 F.3d 522, 527 (5th Cir. 2001) (quoting *Herman v. Express Sixty-Minutes Delivery Service, Inc.*, 161 F.3d 299, 305 (5th Cir. 1998)).

Defendants argue that plaintiffs had the ability to maximize profits by selecting where to buy cables and other supplies.[25]  Plaintiffs could buy supplies from Modern Day, but they could sometimes get better deals from wholesalers.[26]  *See Carrell v. Sunland Const., Inc.*, 998 F.2d 330, 334 (5th Cir. 1993) (ability to increase profits by controlling costs suggests independent contractor status).  Humphrey indicates, however, that even though buying from wholesalers was a possibility, it was difficult for him to get a day off to travel to the nearest wholesalers in New Orleans or Baton Rouge.[27]  Thus, Humphrey

---

[23]     Humphrey Deposition at 285-86.

[24]     *Id.* at 175, 286.

[25]     Lang Deposition at 49; Humphrey Deposition at 177, Tucker Deposition at 72.

[26]     Humphrey Deposition at 177.

[27]     Humphrey Deposition at 178.

asserts, he most often bought his supplies directly from Modern Day. Plaintiffs' ability to buy supplies from wholesalers as a practical matter is a disputed issue.

Plaintiffs' ability to influence their profits and losses is also impacted by the extent to which defendants could deduct fees from plaintiffs' pay. This is particularly true if the defendants deducted fees in excess of the value of the jobs performed, and plaintiffs had no means of recourse to dispute the deductions. *Cf. Parrilla*, 2009 WL 2868432, at *4 (technicians were employees when they had no control over the kinds of jobs they were assigned). As the Court previously noted, there are disputed issues of fact related to the "charge backs". Accordingly, there are disputed issues of material fact on the issue of the extent to which plaintiffs' opportunity for profit or loss is controlled by the employer that preclude summary judgment.

### iii. Skill and Initiative

The Fifth Circuit looks to both skills and ability to exercise initiative to determine whether workers are employees under the FLSA. Even if the Court were to find no issue of fact that plaintiffs' jobs required skill, the issue of plaintiffs' ability to exercise initiative is a mixed bag that, if anything, points in the direction of employee status. Plaintiffs had the ability to increase their profits by working more efficiently,

and they could show initiative as to the order in which they performed the jobs within the windows defendants provided. Further, they could perform custom work.  Plaintiffs could also hire helpers to perform more efficiently, but defendants began to require helpers to hold the same certifications as the installers, which reduced the efficacy of this practice.[28] Plaintiffs were, however, limited in their ability to drum up their own business given defendants' control over their job assignments and over advertising.[29]  Further, there is evidence that plaintiffs had limited control over their costs, and could not control the amount of deductions that defendants took out of their pay, or how much they were paid for jobs performed. Analysis of the skill and initiative factor does not alter the Court's conclusion that summary judgment on this record is not warranted.

### iv. Permanency of the Relationship and Relative Duration

As noted, courts analyze the permanency of the relationship and the relative investments of the parties in determining independent contractor status.  Given the disputed issues of fact

---

[28]   Humphrey Deposition at 124-5.

[29]   R. Doc 114-2 at 77.  DirecTV gave plaintiffs decals to put on their vehicles. Lang Deposition at 44-5.  Plaintiffs do not contend that advertising was a cost of doing business. Humphrey Deposition at 62; Lang Deposition at 47-8; Tucker Deposition at 69-71.

on control and on plaintiffs' ability to influence their profits and losses, regardless of the outcome of the analysis of these other factors, the Court is still unable to accurately determine plaintiffs' status on this summary judgment record.

On this record, defendants' motion for summary judgment on plaintiffs' FLSA claims is DENIED.

*C.   Louisiana Wage Payment Act*

Plaintiffs also bring claims under the Louisiana Wage Payment Act, La. R.S. § 23:631, *et seq.*  Under that statute, employers owe certain duties to "any laborer or other employee." Independent contractors are not covered by the statute. *Knapp v. The Management Co.*, 476 So.2d 567, 568 (La. App. 3 Cir. 1985). In determining whether a worker is an employee for purposes of that statute, Louisiana courts consider the following non-exclusive factors:

> (1) whether there is a valid contract between the parties; (2) whether the work being done is of an independent nature such that the contractor may employ nonexclusive means in accomplishing it; (3) whether the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods, without being subject to the control and direction of the principal, except as to the result of the services to be rendered; (4) whether there is a specific price for the overall undertaking agreed upon; and (5) whether the duration of the work is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach.

*Mendoza v. Essential Quality Const., Inc.*, 691 F.Supp.2d 680, 686 (E.D. La. 2010) (citing *Gordon v. Hurlston*, 854 So.2d 469, 472 (La. App. 3 Cir. 2003)). The crux of the issue is the degree of control that the contract affords the purported employer over the individual. *Mack v. CDI Contractors, Inc.*, 757 So.2d 93, 97 (La. App. 5 Cir. 2000); *Howlett v. Halpern*, 559 So.2d 21, 23 (La. App. 4 Cir. 1990). Under Louisiana law, "[i]t is not the actual supervision or control which is actually exercised by the employer that is significant, but whether, from the nature of the relationship, the right to do so exists." *Mendoza*, 691 F.Supp.2d at 686 (quoting *Gordon*, 854 So.2d at 472); *see also Hickman v. Southern Pac. Transport Co.*, 262 So.2d 385, 391 (La. 1972); *Hughes v. Goodreau*, 836 So.2d 649, 656 (La. App. 1 Cir. 2002); *Mack*, 757 So.2d at 97.[30]

The same disputed issues of fact regarding defendants' control over plaintiffs for purposes of the FLSA also exist with respect to plaintiffs' claims under the LWPA and prevent the Court from granting summary judgment. Therefore the Court DENIES defendants' motion for summary judgment on plaintiffs' LWPA claims.

---

[30] By contrast, in determining employment status under the FLSA, "it is not what the [parties] *could* have done that counts, but as a matter of economic reality what they actually *do* that is dispositive." *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1047 (5th Cir. 1987) (emphasis in original); *see also Hopkins v. Cornerstone America*, 545 F.3d 338, 345 (5th Cir. 2008) (same).

**IV.  Conclusion**

For the foregoing reasons, defendants' motion for partial summary judgment is DENIED.

New Orleans, Louisiana, this <u>12th</u> day of July, 2011.

_____*Sarah Vance*_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE