UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CHRISTIAN LANG, et al. | § | CIVIL ACTION NO. 10-1085 "G"(1) |
| | § | |
| V. | § | JUDGE NANNETTE JOLIVETTE |
| | § | BROWN |
| DIRECTV, INC., et al. | § | |
| | § | MAGISTRATE JUDGE SALLY |
| | § | SHUSHAN |
| | § | |
| | § | |

## ORDER AND REASONS

Before the Court in the above styled and numbered cause is Plaintiffs' Motion for Conditional Class Certification of Collective Action Under the Fair Labor Standards Act. Also before the Court is Defendants' Motion to Strike Declarations. The Court heard oral argument on these motions on December 7, 2011.

Having considered the motions, the responses, the reply, the oral arguments of the parties, the record, and the applicable law, for the following reasons, the Court will grant the Motion for Conditional Class Certification and deny the Motion to Strike Declarations.

## I.  Background

This case was filed in the Twenty-Second Judicial District Court for the Parish of St. Tammany, State of Louisiana, on February 22, 2010 and removed to the Eastern District of Louisiana on April 9, 2010 (Clerk's Doc. No. 1) on the basis of federal question jurisdiction. On August 13, 2010, Plaintiffs filed their First Amended Complaint (Clerk's Doc. No. 43), which incorporated the original state court complaint by reference. Defendants filed an Answer on September 7, 2010 (Clerk's Doc. No. 46).

In this matter, Plaintiffs seek to bring a collective action under the Fair Labor Standards Act ("FLSA")[1], alleging that DirectTV, Inc. ("DirecTV") and JP&D Digital Satellite Systems, Inc. ("JP&D") (collectively "Defendants") engaged in violations of minimum wage, overtime, retaliation, and record-keeping laws.  Plaintiffs are satellite television technicians who installed DirecTV systems in customers' homes in Louisiana and other states, and they seek to represent a class of similarly situated individuals.  Plaintiffs Christian Lang, Larry Tucker, Edward Humphrey, and Gary Smith are the four named plaintiffs asserting their rights and those of similarly situated satellite technicians.  The other plaintiffs are individuals who have already opted-in to this action under the scheme set forth in the FLSA, which allows individuals to opt-in even before the class has been certified.

Defendant DirecTV is the nation's largest provider of satellite television services and provides for the installation and maintenance of its system both by hiring technicians directly and by contracting with entities known as Home Service Providers ("HSPs").  Defendant JP&D was an HSP for DirecTV at all relevant times.  JP&D further subcontracted work to various companies, including one entity that is no longer a party to this action, Modern Day Satellite.  Three of the four named plaintiffs worked exclusively for Modern Day, while the fourth worked primarily with Modern Day but also worked with two other subcontractors.  Plaintiffs allege that despite what appears to be a subcontracting arrangement, they were actually employed by both DirecTV and JP&D as joint employers.

Plaintiffs allege that Defendants failed to record or pay wages, or deducted wages, for time actually worked.  Allegedly, Plaintiffs regularly worked over 40 hours per work week in order to

---

[1]  29 U.S.C. § 201, *et seq.*

2

complete their job assignments but did not receive overtime compensation or received compensation for fewer overtime hours than they worked or were compensated at an incorrect rate. These allegedly uncompensated hours include time worked before the first customer of the day, after the last customer of the day, travel time, and periods during which work was performed during meal time. Plaintiffs also allege a "charge-back scheme" in which Defendants improperly withheld sums from Plaintiffs' pay, resulting in Plaintiffs sometimes allegedly being charged more than they earned on a particular job. Additionally, Defendants allegedly "withheld uniform and tool costs from Plaintiffs' paychecks, failed to compensate Plaintiffs for accrued but unused vacation time and failed to properly pay Plaintiffs for fuel and mileage, and improperly 'charged' plaintiffs for the failures of defendants' equipment."[2]

Furthermore, Plaintiffs allege retaliation in violation of Section 216 of the FLSA. Plaintiffs allege that JP&D sent emails to HSPs and satellite installation/servicing subcontractors in the region "blackballing" the named Plaintiffs from any DirecTV jobs, and Plaintiffs allege that the notices "directly linked the prohibition to the Plaintiffs [sic] assertion of FLSA rights."[3] Plaintiffs submit that these notices effectively ended Plaintiffs' ability to work in their chosen field. Plaintiffs also allege that DirecTV has similarly refused to hire some of the named plaintiffs for installations and service calls because they asserted their FLSA rights. Specifically, named plaintiff Christian Lang was allegedly refused a job servicing DirecTV jobs because of an email from JP&D instructing the employer not to hire him because of his FLSA claim.

---

[2]  *See* Clerk's Doc. No. 43, Ex. 1 at ¶ 21.

[3]  *See* Clerk's Doc. No. 43 at ¶ 44.

Additionally, Plaintiffs bring a class action for alleged violations of the Louisiana Wage Payment Act ("LWPA"). Plaintiffs also originally brought a claim for fraud under state law, but Chief Judge Sarah Vance dismissed that claim on August 13, 2010 (Clerk's Doc. No. 42). At that time, Judge Vance denied the remainder of Defendants' motion to dismiss certain claims (Clerk's Doc. No. 42). Judge Vance then granted an *ex parte* motion by Plaintiffs to dismiss their intentional infliction of emotional distress, negligent infliction of emotional distress, and conversion claims (Clerk's Doc. No. 142). Plaintiffs' Motion for Conditional Class Certification of Collective Action Under the Fair Labor Standards Act was filed on April 6, 2011(Clerk's Doc. No. 126).[4] On July 12, 2011, Judge Vance denied Defendants' motion for partial summary judgment seeking dismissal of the claims of plaintiffs Christian Lang, Larry Tucker, and Edward Dwayne Humphrey (Clerk's Doc. No. 147).

This case was transferred to this Court on October 6, 2011 (Clerk's Doc. No. 200). Regarding their remaining claims, Plaintiffs seek unpaid wages owed, liquidated damages pursuant to 29 U.S.C. § 216(b) and/or prejudgment interest, and attorneys' fees pursuant to 29 U.S.C. § 216(b), and the named plaintiffs seek to be deemed class representatives, bringing an action on behalf of others similarly situated pursuant to 29 U.S.C. § 216(b). Plaintiffs also seek an injunction mandating a cease to the alleged retaliatory "blackballing." Here, Plaintiffs seek conditional certification of their FLSA collective action, which Defendants oppose, and Defendants move to strike the declarations of opt-in plaintiffs John Buckley and Stanley C.E. Belmont made in support of conditional certification.

---

[4] Defendants filed a Motion to Strike Declarations relied upon by Plaintiffs in Plaintiffs' Motion for Conditional Class Certification of Collective Action Under the Fair Labor Standards Act, on November 15, 2011 (Clerk's Doc. No. 207).

## II.  Law and Analysis

### A.  *Applicability of the Fair Labor Standards Act*

The FLSA sets forth requirements for minimum wage, overtime pay, and record keeping for employees who are not excepted because they hold an executive, administrative, or professional position.[5]  The FLSA also creates a private right of action for employees when these rights are violated.[6]  By the terms of the FLSA, these rights are created for *employees* against *employers*. Accordingly, one must be an employee of a covered employer to bring an action under the FLSA. The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee,"[7] while an employee is "any individual employed by an employer."[8]  Under the FLSA, to "employ" means "to suffer or permit to work."[9]

Generally, in determining whether an employment relationship exists, courts look to several non-exclusive factors:

> (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship.[10]

---

[5]  29 U.S.C. §§ 206(a)(1), 207(a)(1), 213(a)(1).  The employer bears the burden of proving the applicability of an exemption.  *Corning Glass Works v. Brennan*, 417 U.S. 188, 197 (1974).

[6]  29 U.S.C. § 216(b).

[7]  29 U.S.C. § 203(d).

[8]  29 U.S.C. § 203(e)(1).

[9]  29 U.S.C. § 203(g).

[10]  *Thibault v. Bellsouth Telecomms., Inc.*, 612 F.3d 843, 846 (5th Cir. 2010).

Courts that have looked to these factors in determining whether satellite and cable technicians are employees under the FLSA have come to mixed results.[11]

Some courts have considered whether non-traditional employment situations qualify under the FLSA.  For instance, the Supreme Court has held that members of a cooperative who worked from home qualified as employees where the "management fixes the piece rates at which [the employees] work," "the management can expel them for substandard work or for failure to obey the regulations," and "in other words, [where the management can] hire or fire the [workers]."[12]  The Court concluded that, "if the 'economic reality' rather than 'technical concepts' is to be the test of employment, these homeworkers are employees."[13]  Not only this, but joint employers may be held liable for violating the FLSA.[14]

Importantly, lower courts have found that the FLSA's definition of employer is so broad that the case may proceed even where there exist threshold questions regarding employment status.[15]

---

[11] *Compare Freund v. Hi-Tech Satellite, Inc.*, 185 Fed. Appx. 782 (11th Cir. 2006); *Herman v. Mid-Atlantic Installation Servs., Inc.*, 164 F.Supp.2d. 667 (D. Md. 2000), *aff'd*, 16 Fed. Appx. 104 (4th Cir. 2001); *and Dole v. Amerilink Corp.*, 729 F.Supp. 73 (E.D. Mo. 1990) *with Parrilla v. Allcom Const. & Installation Servs.*, No. 6:08-cv-1967, 2009 WL 2868432 (M.D. Fla., Aug. 31, 2009) (cable installer was employee, not independent contractor); *and Santelices v. Cable Wiring*, 147 F.Supp.2d 1313, 1323 (S.D. Fla. 2001) (genuine issue of material fact existed as to whether cable installer was an employee).

[12] *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 32-33 (1961).

[13] *Id*. at 33 (citations omitted).

[14] 29 C.F.R. § 791.2 ("all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the act").

[15] *Fernandes da Silva v. Royal Constr. of La., LLC*, No. 08-4021, 2009 U.S. Dist. LEXIS 100692, at * 8-9 (E.D. La., Oct. 29, 2009) (Lemmon, J.) (refusing to dismiss plaintiffs' claims because questions existed regarding whether the defendant was an employer or joint employer of plaintiffs). *Accord*, *Nobles v. State Farm Mutual Auto. Ins. Co.*, No. 10-CV-04175, 2011 U.S. Dist. LEXIS 95379, at *10 (W.D. Mo., Aug. 25, 2011) (holding that plaintiffs sufficiently alleged joint

Here, Plaintiffs allege that DirecTV employed a field operations labor scheme in which technicians were improperly misclassified as independent contractors, in order to circumvent FLSA requirements.  Plaintiffs further allege that DirecTV used in-house software to specifically assign work orders and routes for technicians.  Although technicians were required to purchase their own tools and uniforms and typically supplied their own trucks, the tools were mandated by DirecTV, the uniforms bore the DirecTV logo, and trucks typically were required to bear DirecTV placards on the doors.  Further, Plaintiffs allege that DirecTV analyzes the performance of technicians, can have individuals fired, and demands exclusivity from its workers.  Plaintiffs also allege a system of nationwide compensation.  Defendants counter that each individual HSP had "complete discretion over the manner and means" of performance and that the individual HSPs employ their own support personnel, maintain their own payroll and employment records, and pay their own employees.  In sum, Defendants argue that a typical subcontracting relationship existed here.  Plaintiffs respond that this situation is anything but a typical subcontracting relationship, and furthermore, Plaintiffs argue, Defendants are at least joint employers of the technicians, which would make them liable under the FLSA.[16]

This Court need not decide at this juncture the exact nature of the employment relationship here.  As in other actions where threshold employment questions existed,[17]  Plaintiffs have alleged enough to satisfy the initial burden at this stage.  The fact that questions remain about the employment status of DirecTV regarding the named plaintiffs and proposed class of plaintiffs will

employer status such that conditional class certification could be granted).

[16] 29 C.F.R. § 791.2.

[17] *Fernandes da Silva*, 2009 U.S. Dist. LEXIS 100692, at * 8-9; *Nobles*, 2011 U.S. Dist. LEXIS 95379, at *10.

not stop this Court from considering the propriety of conditionally certifying the collective action.[18] Although courts have later decertified actions because of employment relationship questions,[19] this does not alter the present burden at the conditional certification stage considered here.

## B. *Class Certification Under the Fair Labor Standards Act*

## 1. Applicable Law

Under the FLSA, one or more employees can pursue a class action in a representative capacity on behalf of similarly situated employees.[20] Such collective actions allow similarly situated plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources" and benefits the judicial system "by efficient resolution in one proceeding of common issues of law and fact."[21]   However, the FLSA does not define the requirements for employees to be deemed "similarly situated," and the district courts have "the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure."[22]   In FLSA collective actions, district courts have broad discretion to grant certification and broad authority over

---

[18]   *Id.*

[19]   *See, e.g., Mooney*, 54 F.3d 1207, 1216 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).

[20]   "An action to recover the liability . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."  *Id.*

[21]   *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

[22]   *Id.* at 171.

notice in order to prevent the misuse of such actions,[23] and courts "have refused to permit FLSA suits to proceed as collective actions if the individualized inquiries required" would eliminate the benefits of the collective action.[24]  The Fifth Circuit has not yet definitively "ruled on how district courts should determine whether plaintiffs are sufficiently 'similarly situated' to advance their claims together in a single § 216(b) action,"[25] so within the Fifth Circuit, this discretion is typically exercised using one of two approaches.[26]

*(a)  The* Lusardi *Approach*

The first routinely utilized method is a two-step approach originally articulated in *Lusardi v. Xerox Corporation*.[27]  Under this approach, the court first determines at the "notice stage" whether notice should be given to potential members of the class action, and this determination is usually made on the basis of "only . . . the pleadings and any affidavits."[28]  The parties must be similarly situated, and an ad hoc, case-by-case analysis is used.[29]  Though the standard is lenient, "it is by no

---

[23]  *Id.*

[24]  *Clay v. Huntington Ingalls, Inc.*, No. 09-7657, Clerk's Doc. No. 109, at p. 8 (E.D. La., Sept. 29, 2011) (Zainey, J.).

[25]  *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 518-19 (5th Cir. 2010).

[26]  *See  Mooney*, 54 F.3d at 1213-14.

[27]  118 F.R.D. 351 (D.N.J. 1987).

[28]  *Mooney*, 54 F.3d at 1213-14.

[29]  *Id.* at 1213.

means automatic."[30]  The burden to show that plaintiffs are similarly situated rests on the plaintiff,[31] but "[a] plaintiff need only demonstrate a *reasonable basis* for the allegation that a class of similarly situated persons may exist."[32]  Plaintiffs must be similarly situated; they need not be identically situated,[33] and even plaintiffs who operate in different geographical locations and under different managers and supervisors may be deemed similarly situated in some circumstances, such as when they share similar job titles and responsibilities.[34]  "Whether at the notice stage or on later review, collective action certification is not precluded by the fact that the putative plaintiffs performed various jobs in differing departments and locations."[35]

However, "[a]  plaintiff must do more than show the mere existence of other similarly situated persons, because there is no guarantee that those persons will actually seek to join the lawsuit."[36]  Generally, a plaintiff must demonstrate that "(1) there is a reasonable basis for crediting

---

[30]  *Lima v. Int'l Catastrophe Solutions, Inc.*, 493 F.Supp.2d 793, 798 (E.D. La. 2007).

[31]  *England v. New Century Fin. Corp.*, 370 F.Supp.2d 504, 507 (M.D. La. 2005).

[32]  *Lima*, 493 F.Supp.2d at 798 (emphasis added).

[33]  *Crain v. Helmerich & Payne Int'l Drilling Co.*, No. 92–0043, 1992 WL 91946 (E.D. La., Apr. 16, 1992).

[34]  *Kuperman v. ICF Int'l*, No. 08-565, 2008 U.S. Dist. LEXIS 88605, at *21-22 (E.D. La., Oct. 31, 2008) (Barbier, J.).

[35]  *Donohue v. Francis Serv., Inc.*, No. 04-170, 2004 WL 1161366, at * 2 (E.D. La., May 24, 2004) (citations omitted) (granting conditional certification where plaintiffs alleged a common policy of employer denying employees payment and finding affidavits and other documentary evidence sufficient to support the allegations).  "The Court rejects defendants' argument that such a class is problematic because it includes individuals from various positions, locations, etc.; the law is plain that that does not undermine the 'similarly situated' requirement."  *Id.* at *3.

[36]  *Tolentino v. C & J Spec-Rent Servs., Inc.*, 716 F.Supp.2d 642, 647 (S.D. Tex. 2010) (citing *Ali v. Sugarland Petroleum*, No. 4:09–cv–0170, 2009 WL 5173508, at *2 (S.D. Tex., Dec. 22, 2009). *See also*, *H & R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999) ("[A]lthough

the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit."[37]  Only those employees who affirmatively "opt-in" to the suit are bound by a collective action under the FLSA.[38]

Because the court typically has little evidence at this stage, the determination of conditional certification "is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class."[39]  Generally, courts do not require more than "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan,"[40] and only a modest factual basis is required.  In determining whether plaintiffs have made substantial allegations of a single plan, courts often look to "whether potential plaintiffs were identified . . . whether affidavits of potential plaintiffs were submitted . . . and whether evidence of a widespread discriminatory plan was submitted."[41]

---

the standard for satisfying the first step is lenient, . . . the court still requires at least substantial allegations that the putative class members were together victims of a single decision, policy or plan. . . .")(internal quotation omitted)).

[37] *Morales v. Thang Hung Corp.*, 4:08-2795, 2009 WL 2524601, at *2 (S.D. Tex., Aug. 14, 2009).  *See also*, *Hickson v. U.S. Postal Service*, No. 5:09-CV-83, 2010 U.S. Dist. LEXIS 104112, at * 18 (E.D. Tex., July 22, 2010).

[38]  29 U.S.C. § 216(b) ("[N]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

[39]  *Mooney*, 54 F.3d at 1214.

[40]  *Id.* (quoting *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988)); *Xavier v. Belfor USA Group, Inc.*, 585 F.Supp.2d 873, 877 (E.D. La. 2008) (requiring plaintiffs present at least some evidence beyond unsupported factual assertions of a "single decision, policy, or plan").  *See also*, *H & R Block*, 186 F.R.D. at 400.

[41]  *H & R Block*, 186 F.R.D. at 400.

If conditional certification is granted, the case then proceeds through discovery as a class action to the "merits stage," at which time the defendants may move for decertification.[42]  At that time, a more stringent approach governs and *Lusardi* applies a three-factor test, considering: (1) the extent to which employment settings are similar or disparate; (2) the extent to which any of the employer's defenses are common or individuated; and (3) fairness and procedural concerns.[43]  The court then makes "a factual determination on the similarly situated question,"[44] either allowing the representative action "to proceed to trial" or decertifying the class and dismissing without prejudice the claims of opt-in plaintiffs.[45]  Generally, the matter is less appropriate for certification when plaintiffs' job experiences are more dissimilar and when the employer's defenses are more individuated.

Although the Fifth Circuit has not specifically endorsed decertification in this manner,[46] the Fifth Circuit has affirmed a district court's decertification decision based on the use of this *Lusardi* approach.[47]  This approach "is consistent with the Fifth Circuit's statements that there is a fundamental, irreconcilable difference between the class action described by Rule 23, Fed. R. Civ.

---

[42]  *Mooney*, 54 F.3d at 1214.

[43]  *Kuperman*, 2008 WL 4809167 at *5 (quoting *Johnson v. Big Lots Stores, Inc.*, 561 F.Supp.2d 567, 573 (E.D. La. 2008) (conditional certification the majority approach)).

[44]  *Mooney*, 54 F.3d at 1214.

[45]  *Id*.

[46]  *Id*. at 1216 ("In so holding we specifically *do not* endorse the methodology employed by the district court, and *do not* sanction any particular methodology.  We simply need not decide the appropriate methodology under these facts, and therefore leave that inquiry for another day.").

[47]  *Id*. at 1215-16.

P., and the collective action provided by the FLSA."[48]

### (b) The Shushan Approach

The Fifth Circuit has recognized a second method of analysis,[49] the "spurious class action" approach characterized by *Shushan v. University of Colorado*.[50]   The court in *Shushan* determined that "while the 'opt-in' feature of section 216 is manifestly 'irreconcilable' with the 'opt-out' feature of rule 23, it does not necessarily follow that every other feature of rule 23 is similarly irreconcilable with section 216."[51]   Accordingly, the court held that it would be unreasonable to assume that the Rule 23 inquiries were discarded merely because the opt-out feature was discarded, particularly since "[i]f rule 23 were wholly inapplicable, then [a class] under section 216 would be practically formless. . . ."[52]

Under this *Shushan* analysis, the inquiry is "coextensive" with Rule 23 class certification[53] and plaintiffs must prove the existence of a definable, manageable class, as well as that plaintiffs are proper representatives of the class.[54]   This requires plaintiffs to provide individualized proof that the

---

[48] *Smith v. Servicemaster Holding Corp.*, No. 10-444, 2011 WL 4591088 (M.D. La., Sept. 30, 2011) (noting the important difference between opt-in and opt-out class actions) (citing *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916 (5th Cir. 2008)).  *See also*, *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975).

[49] *Mooney*, 54 F.3d at 1216.

[50] 132 F.R.D. 263 (D. Colo. 1990).

[51] *Id*. at 266 (citations omitted).

[52] *Id*.

[53] *Mooney*, 54 F.3d at 1214.

[54] *Shushan*, 132 F.R.D. at 268.

claims of every single opt-in plaintiff can be presented to a jury with some measure of efficiency, and the analysis is more akin to that for class certification under Rule 23 of the Federal Rules of Civil Procedure.[55]   Plaintiffs must "satisfy all of the requirements of rule 23, *insofar as those requirements are consistent with* 29 U.S.C.A. § 216(b) (West 1965)"[56] – an approach deemed intermediate between the few district courts that have held "that rule 23 applies *in toto*" and the majority of courts that "have suggested, by way of holdings or broad *dicta*, that rule 23 simply does not apply to section 216 actions."[57]

*(c)  "Hybrid" Approach*

Though not explicitly endorsed by the Fifth Circuit, some district courts have found that sometimes "the parties will have engaged in discovery, perhaps limited or perhaps extensive, and so the standard for certification at the notice stage will appropriately be less lenient."[58]   This does not, however, raise the plaintiffs' burden at the conditional certification stage to the level that applies

---

[55]   *Id*. ("I cannot accept the extraordinary assertion that an aggrieved party can file a complaint, claiming to represent a class whose preliminary scope is defined by him, and by that act alone obtain a court order which conditionally determines the parameters of the potential class and requires discovery concerning the members of that class.  Before I conditionally determine the scope of the class, plaintiffs will need to satisfy me that there exists a definable, manageable class and that they are proper representatives of the class.").

[56]   *Id*. at 265.

[57]   *Id*. at 265 (collecting cases).

[58]   *Clay*, No. 09-7625, Clerk's Doc. No. 109, at p. 7 (citing *McNight v. D. Houston, Inc.*, 756 F.Supp.2d 794, 802 (S.D. Tex. 2010).  *See also*, *Basco v. Wal-Mart Stores, Inc.*, No. 00-3184, 2004 WL 1497709 (E.D. La., July 2, 2004); *Pfohl v. Farmers Ins. Group*, No. 03-3080, 2004 WL 554834, *3 (C.D. Cal., Mar. 1, 2004) (moving directly to second stage where parties did not dispute discovery was undertaken); *Morisky v. Public Serv. Elec. & Gas Co.*, 111 F.Supp.2d 493, 498 (D.N.J. 2000) (applying stricter standard where discovery was completed).

at the decertification stage.[59]  "That standard is only appropriate after discovery is largely complete

and the case is ready for trial."  Instead, some courts apply a hybrid approach.

Although nominally utilizing the *Lusardi* approach, the court in *Basco v. Wal-Mart Stores,

Inc.*[60] found that the extensive discovery that had been conducted warranted considerations typically

left to the second stage of *Lusardi*.[61]  Accordingly, the court first found that plaintiffs had not carried

their burden "to demonstrate identifiable facts or legal nexus that binds the claims so that hearing

the cases together promotes judicial efficiency."[62]  The court then considered the disparate settings,

various defenses available, and fairness and procedural considerations, noting that "[i]t would be

a waste of the Court's and the litigants' time and resources to notify a large and diverse class only

to later determine that the matter should not proceed as a collective action because the class

members are not similarly situated."[63]

---

[59]  *Id.*

[60]  No. 00-3184, 2004 WL 1497709 (E.D. La., July 2, 2004).

[61]  *Id.* at *4-5 ("Because the aim of collective actions is to promote judicial economy, and substantial discovery has already been undertaken such that the Court can make an educated decision as to whether certifying this matter as a collective action would survive the decertification process, the ends of judicial economy require the Court to make that enquiry at this stage.").  Some other courts have determined that extensive discovery warrants a heightened standard such that "the similarly situated inquiry is more stringent and the two-step inquiry collapses into one step."  *Odem v. Centex Homes*, No. 3:08-CV-1196, 2010 WL 424216, at *3-4 (N.D. Tex., Feb. 4, 2010); *Valcho v. Dallas Cnty. Hosp. Dist.*, 574 F.Supp.2d 618, 622 (N.D. Tex. 2007).

[62]  *Id.* at *7.

[63]  *Id.* at *5.  Ultimately, the court concluded that there was no evidence of a unified policy, plaintiffs were not similarly situated, and large manageability concerns were present.  *Id.* at *8.

Similarly, in *Clay*, the court determined that "a more demanding analysis of the certification issue is appropriate in light of the substantial discovery that [had] taken place"[64] and found that the court should not "simply ignore the fact that certain individualized defenses might apply and postpone the issue until decertification."[65]  In ultimately finding the claims too individuated for collective action, Judge Zainey further stated, "The Court is not inclined to believe that the correct course of action is to blithely certify the action with a blind eye toward deficiencies that discovery has already revealed."[66]

Courts utilizing this hybrid approach appear to recognize "that a decision to certify, even if subject to correction at the decertification stage, is not without consequences."[67]  Too much leniency at the notice stage can lead to a "frivolous fishing expedition conducted by the plaintiff at the employer's expense"[68] and can create great settlement pressure early in the case.[69]  Furthermore, extreme leniency at the notice stage can result in conditional certification that must later be revoked

---

[64] *Clay*, No. 09-7625, Clerk's Doc. No. 109, at p. 12.

[65] *Id.*

[66] *Id.* at p. 12-13.

[67] *Clay*, No. 09-7625, Clerk's Doc. No. 109, at p. 10.

[68] *Lima*, 493 F.Supp.2d at 799 (quoting *Lentz v. Spanky's Rest. II, Inc.*, 491 F.Supp.2d 663, 669 (N.D. Tex. 2007)).

[69] *Clay*, No. 09-7625, Clerk's Doc. No. 109, at p. 11.

16

on the eve of trial[70] or even after trial,[71] when it becomes obvious that manageability concerns make collective action impossible.

## 2. Plaintiffs' Motion for Conditional Certification

*(a) Standard to Be Applied*

In order to determine whether this Court should conditionally certify the class proposed by Plaintiffs, this Court must first determine under which standard it will evaluate the conditional certification motion.  Unsurprisingly, Plaintiffs suggest this Court should follow the more lenient *Lusardi* approach, while Defendants argue that a more stringent standard is warranted because of the allegedly extensive amount of discovery that has occurred.[72]  Defendants argue that the amount of discovery conducted thus far should cause the Court to use a standard more similar to that of a Rule 23 class action determination.

Before this case was reassigned, Judge Vance declared, "This Court will use the *Lusardi* approach in determining whether this case is appropriate for collective treatment."[73]  Accordingly, this Court holds that it would unfairly prejudice Plaintiffs if this Court were to now apply a heightened standard for conditional certification.  Plaintiffs have operated under the assumption that *Lusardi* would be applied, and they would likely desire to make additional arguments regarding

---

[70]  *Espenscheid v. DirectSat USA, LLC*, No. 09-CV-625, 2011 U.S. Dist. LEXIS 56062 (W.D. Wisc., May 23, 2011).

[71]  *Johnson*, 561 F.Supp.2d at 568.

[72]  According to Defendants, DirecTV and JP&D have produced thousands of records over the past twenty months, with no outstanding requests for production or interrogatories remaining.

[73]  Clerk's Doc. No. 42, at p. 28.

manageability and merits before this Court makes a determination on a different basis.  Furthermore, although the more lenient *Lusardi* approach is not the only recognized method for conditional class certification, it is the more common approach and routinely used by courts in this District.[74]  This Court is leery to apply even *Basco* or *Clay* scrutiny at this time, despite the discovery that has proceeded, given that the Fifth Circuit has not yet indicated that discovery warrants a heightened standard.

*(b) Sufficiency under the* Lusardi *Standard*

Application of the *Lusardi* standard does not mean that Plaintiffs automatically prevail on the conditional certification issue.  Plaintiffs must still meet their burden of demonstrating a reasonable basis for believing that aggrieved individuals exist, that those aggrieved individuals are similarly situated to Plaintiffs, and that those individuals desire to opt-in to this lawsuit.[75]

Here, Plaintiffs allege that each member of the collective action:

(1) worked as a technician installing and servicing DirecTV equipment at DirecTV customer locations throughout the United States; (2) was assigned work orders by DirecTV based upon DirecTV's needs; (3) was initially credited with a flat, task based amount upon completing the task; and (4) was subjected to national policies

---

[74] *See, e.g., Melson v. Directech Southwest, Inc.*, No. 07-1087, 2008 U.S. Dist. LEXIS 48525 (E.D. La. 2008); *Johnson*, 561 F.Supp.2d at 569.  *See also*, *Sandoz*, 553 F.3d 913, 915 n.2 (referring to the *Lusardi* approach as the "typical" manner for collective actions); *England*, 370 F.Supp.2d at 509; *Hickson*, 2010 U.S. Dist. LEXIS 104112, at * 18 (stating "[t]he *Lusardi* two-step approach is the more generally accepted method of analysis among federal courts. . ."); *Smith*, 2011 WL 4591088, at *1 (referring to *Lusardi* as the "prevailing method").  *See also*, 7B C. Wright & A. Miller, Federal Practice & Procedure § 1807 (3d ed.2002) (stating that "most courts in collective actions follow a two-stage certification process").

[75] *Morales*, 2009 WL 2524601 at *2.

of DirecTV that affected every aspect of their role as a technician and particularly how much pay they ultimately received.[76]

Plaintiffs allege that the employment situations of all satellite technicians in the class are identical in that all are employed in the field, they lack a physical work address, they receive orders from DirecTV, and they proceed in the same fashion with the same general routines, which can be sufficient to establish the similarly situated requirement.[77] Further, Plaintiffs allege that all contracts between HSPs and DirecTV were identical. Defendants respond that three of the four named plaintiffs worked exclusively with one subcontractor to JP&D, Modern Day, while the fourth named plaintiff worked primarily with Modern Day but also worked with two other subcontractors. Defendants are willing to concede that individuals who worked for subcontractor Modern Day are similarly situated, but argue that the class certification requested exceeds the bounds of similarly situated individuals. According to Defendants, the job duties of the Plaintiffs require individualized analysis and were too varied for Plaintiffs to be similarly situated to one another. Defendants' arguments are not entirely without merit, and they may well succeed upon a later motion to decertify after further discovery is conducted. However, the Court need not consider these arguments at this time. The burden upon Plaintiffs at this stage is light, and they have met that burden by demonstrating a class of similarly situated individuals performing the same job functions in the field under the same employment scheme. Furthermore, Plaintiffs have provided affidavits that indicate that individuals wish to opt-in to the present suit; in fact, several individuals have already done so.

---

[76] Clerk's Doc. No. 126-3 at p. 9.

[77] *See Kuperman*, 2008 U.S. Dist. LEXIS 88605, at *21-22.

19

To gain conditional certification, Plaintiffs additionally must allege a common scheme.  To this effect, Plaintiffs allege a top-down compensation scheme to purposefully and wrongly classify technicians as independent contractors through a national HSP network.  Plaintiffs claim that all of DirecTV's 17,000 technicians were classified as independent contractors by 2007[78] and that a nationwide policy governed compensation for those technicians.[79]  Under this alleged policy, technicians illegally were paid piece-rate, without regard to the time expended to complete a job.[80]  Plaintiffs allege that this policy was national, affecting all technicians, no matter for which HSP they worked, and that DirecTV was in charge of scheduling and dispatching technicians through its company-wide computer system.

Plaintiffs also allege a charge-back scheme in which DirecTV had 90 days to make deductions from the specified rates established for technicians' tasks.  Plaintiffs allege that these charge-backs were then passed through HSPs to the technicians.  Plaintiffs specifically note two types of chargebacks employed by DirecTV: "On Time Guarantee" and "Office of the President."  Defendants respond that "HSPs have complete autonomy in the way they pay their independent contractor technicians and subcontracting companies – DIRECTV has no knowledge or involvement

---

[78]  Defendants respond that this allegation is "patently false" and counter that 43% of installation and service work is performed by employees of DirecTV's own entity, DirecTV Home Services.

[79]  Defendants respond that the sole authority to determine the manner in which work was performed rested with each individual HSP, not with DirecTV.

[80]  Plaintiffs not only allege this in their pleadings, but also they provide affidavits in which individual plaintiffs state that they were paid on a "per-job basis" despite regularly working overtime.

in their pay practices"[81] and deny allegations of a "pass-through" scheme.[82]  Defendants further direct the Court to deposition testimony, demonstrating that different subcontracting companies differently imposed chargebacks and that chargebacks were discretionary.  However, even if this is true, Defendants could potentially still be liable as joint employers.[83]

The Court finds that Plaintiffs have met this lenient standard of proof, having put forth substantial allegations of a "single decision, policy, or plan"[84] by alleging that DirecTV purposefully misclassifies satellite technicians as independent contractors, despite the large degree of control that DirecTV exerts over the technicians, in order to circumvent FLSA requirements.   Plaintiffs do not simply allege that DirecTV is involved, but instead cite the use of in-house software to manage work orders.   Furthermore, Plaintiffs have submitted numerous affidavits suggesting that individuals desire to opt-in to this suit, evidence that other courts have found pertinent to this inquiry.[85]  This Court is certainly mindful of the manageability concerns expressed in cases such as *Basco*, *Clay*, and *Johnson*, as well as those expressed by the Defendants in their briefings and oral argument.  However, the Court finds that these arguments are more appropriately addressed upon a motion to decertify the class at step two of the *Lusardi* analysis.

---

[81]  Clerk's Doc. No. 212 at p. 11.

[82]   Defendants claim that the incentive payments and deductions of an HSP to its subcontractors were different from the incentives and deductions imposed by DirecTV upon its subcontracting HSPs.

[83]  29 C.F.R. § 791.2.

[84]  *Mooney*, 54 F.3d at 1214.

[85]  *H & R Block*, 186 F.R.D. at 400.

**B.  The Motion to Strike Declarations**

**1.  Applicable Law**

The Federal Rules of Civil Procedure provide that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."[86]  Similarly, under the Federal Rules of Evidence, "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."[87]  On a motion to certify, the standard to determine admissibility is no different from that on other motions.[88]

However, simply because a declaration employs boilerplate language does not mean that the statements do not reflect personal knowledge.  "There is no rule that requires plaintiffs to compose affidavits in their own words, without the assistance of counsel,"[89] and common declarations may

---

[86]  Fed. R. Civ. P. 56(c)(4).

[87]  Fed. R. Evid. 602.  *See also, Owen v. Golf & Tennis Pro Shop, Inc.*, No. 09-571, 2010 WL 3859640, at *5 (E.D. Tex., Sept. 30, 2010); *Brauninger v. Default Mgm't Solutions, L.L.C.*, No. 05-688, 2006 U.S. Dist. LEXIS 85380, at *7 (E.D. La., Nov. 22, 2006); *Bright v. Ashcroft*, 259 F. Supp. 2d. 494, 498 (E.D. La. 2003) (striking statements not based upon personal knowledge).

[88]  *Xavier*, No. 06-491, Clerk's Doc. No. 334, at p. 7,(E.D. La., Sept. 22, 2008) (Zainey, J.).

[89]  *Mathews v. ALC Partner, Inc.*, No. 08-10636, 2009 U.S. Dist. LEXIS 75097, at *12-13 (E.D. Mich., Aug. 29, 2009).

be reasonable where there is great similarity.[90]   Additionally, declarants can have personal knowledge about others by virtue of their job duties.[91]

In a case also arising under the FLSA, one district court recognized that the defendant raised valid concerns regarding personal knowledge and foundation for identical or nearly identical statements, but the court determined that such "deficiencies" "do not mandate the declarations be stricken."[92]   Instead, questions regarding the personal knowledge of the declarant, where he does allege that his statements are based on personal knowledge, "go[] to the weight, rather than the admissibility of the declaration."[93]

Additionally, some courts have determined that "plaintiffs need not come forward with evidence in a form admissible at trial" at the conditional certification stage, so long as the evidence is "at a minimum" based on personal knowledge.[94]   The court need only require a "minimal showing of similarity established by allegations and declarations" at this stage.[95]

---

[90]   *Lima*, 493 F.Supp.2d at 798-99.   *See also, Noble v. Serco, Inc.*, No. 08-76, 2009 WL 3154252 (E.D. Ky., Sept. 28, 2009) ("where the declarants have had similar experiences, it is not necessary that each of them come up with a creative way to state the same allegations").

[91]   *Howard v. Securitas Security Servs., USA Inc.*, No. 08-2746, 2009 WL 140126, at *4 (N.D. Ill., Jan. 20, 2009).

[92]   *Hickson*, 2010 U.S. Dist. LEXIS 104112, at *41.

[93]   *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, No. 07-421, 2007 WL 3256210 (W.D. Tex., Nov. 2, 2007).   *Accord, EEOC v. Columbia Sussex Corp.*, 632 F.Supp.2d 576, 583 (M.D. La. 2009) ("any such inconsistencies. . . go to the credibility and weight . . . rather than [] admissibility").

[94]   *Howard*, 2009 WL 140126, at *3 ("The most reasonable approach to the respective evidentiary burdens of the plaintiff during the two stages is one that requires a stricter standard of proof in the second stage . . . .").

[95]   *Id.* at *5 (quotation omitted).

**2. Defendants' Motion to Strike**

By this motion, Defendants seek to strike the declarations of opt-in technicians John Buckley and Stanley C.E. Belmont, submitted by Plaintiffs in support of Plaintiffs' Motion for Conditional Certification.  Defendants allege that based on the deposition testimony of these witnesses, the declarations should be stricken because the deposition testimony allegedly "confirms that the Declarations do not contain facts of which they [the declarants] have personal knowledge, and in some cases, contain assertion which the plaintiffs now acknowledge are simply false."[96] Specifically, Defendants argue that these declarations are merely identical, pre-printed forms wherein the declarants had only to fill in their names, places of domicile, and the states where the declarants purportedly worked on DirecTV systems.  Defendants argue that these statements are unreliable and inadmissible because of their generalized nature and because they are allegedly not based upon the personal knowledge of the declarants.  Accordingly, Defendants argue that these declarations are insufficient as a matter of law to satisfy the requirements for conditional certification of a collective action under the FLSA.

The Defendants also base their argument that the declarations are inadmissible upon their allegation that the declarations are not in the declarants' own words and that they were prepared by counsel without input from the purported declarants.  Additionally, Defendants argue that the statements are hearsay because they concern matters about which the technicians have allegedly admitted they lack personal knowledge.  As a result, according to Defendants, the declarations "are not competent evidence and should not be considered in connection with the Motion to Certify."[97]

---

[96]   *See* Clerk's Doc. No. 207.

[97]   *See* Clerk's Doc. No. 207, Ex. 1.

The declarations, however, specifically declare that the declarant has "personal knowledge of all facts and circumstances in this declaration" and that "the foregoing is true and correct to the best of [the declarant's] knowledge." Further, plaintiffs need not compose affidavits in their own words.[98] These Plaintiffs have personal knowledge of their own hours and compensation schemes, and they attest to having knowledge of the general compensation scheme utilized by their employer, thus meeting the personal knowledge requirement.

Furthermore, to the extent that these declarations exhibit deficiencies, striking them is a harsh remedy that is not mandated here,[99] particularly given the light burden Plaintiffs must meet on a motion for conditional certification. Rather, such questions go to the weight or credibility of the declarations[100] – an inquiry more appropriate for a later stage in these proceedings. The declarations are sufficient to meet the "minimal showing" required for conditional certification, and they need not be stricken.

### III.  Conclusion

For the reasons set forth above, the Court grants the Motion for Conditional Class Certification and denies the Motion to Strike Declarations.

**IT IS HEREBY ORDERED** that the Plaintiffs' Motion for Conditional Class Certification pursuant to Section 216(b) of the Fair Labor Standards Act is **GRANTED**.

**IT IS FURTHER ORDERED** that the parties shall meet and discuss the proposed notice and consent to sue forms within ten days of the date this order is signed.

---

[98]  *Lima*, 493 F.Supp.2d at 798-99; *Noble*, 2009 WL 3154252.

[99]  *Hickson*, 2010 U.S. Dist. LEXIS 104112, at *41.

[100]  *Id.*; *Ellington Credit Fund*, 2007 WL 3256210; *EEOC*, 632 F.Supp.2d at 583.

**IT IS FURTHER ORDERED** that the parties shall submit the proposed notice and consent to sue forms, with any objections, to the Court within fifteen days of the date this order is signed.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike Declarations is **DENIED**.

**NEW ORLEANS, LOUISIANA** this __30th__ day of December, 2011.

NANNETTE JOLIVETTE BROWN
UNITED STATES DISTRICT JUDGE